INSURANCE CO. OF NORTH AMERICA v. McWILLIAMS. (No. 7761.)

(Court of Civil Appeals of Texas. Galveston. Nov. 26, 1919.)

INSURANCE ☞246—INSURED NOT ENTITLED TO RECOVER WHERE POLICY CANCELED BY AGREEMENT WITH WAIVER OF TENDER OR RETURN OF UNEARNED PREMIUM.

Where fire policy with standard cancellation clause was canceled by insurer, insured who, upon receiving notice of cancellation, immediately acquiesced therein, and surrendered policy to agent without demanding refund of the old ·premium, depending upon agent's assurance that he would procure other insurance and apply overpaid premium upon new policy, could not recover upon the old policy, though agent failed to procure new one; the policy having been canceled by mutual agreement, and insured having waived the tender or return of unearned premium as a condition precedent to cancellation.

Appeal from Harris County Court; Walter E. Monteith, Judge.

Action by D. T. McWilliams against Insurance Company of North America. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Love, Wagner & Wagner and Elwood Fouts, all of Houston, for appellant.

Atkinson & Atkinson, of Houston, for appellee.

GRAVES, J. The judgment appealed from by the insurance company in this cause was a recovery upon a fire insurance policy issued by it upon the household furniture of the appellee, which contained what is known as the standard cancellation clause, as follows:

"This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary rate; except that when this policy is canceled by this company by giving notice it shall retain only the pro rata premium."

Upon the issue of a cancellation of the policy or not, Mr. McWilliams, the appellee, testified:

"Along about the 1st of August, 1917, I had a conversation with Mr. Cooley with reference to this policy. He came out to my house between 8 and 9 o'clock in the morning, and I was asleep at that time, and Mrs. McWilliams woke me up, and we had the conversation on the porch of my residence, right at the front door. I got up and dressed, and went out and talked with Mr. Cooley. My wife said that Mr. Cooley was at the door and wanted to see me, and I got up and went to the door, and said, 'Good morning,' and shook hands with him, and he said that he had received a letter from the insurance company in which I was insured, among a number of others, to cancel the policy. He had the letter with him, and I looked at it—just glanced at it. He showed me the letter, and I just glanced at it, and I said, 'Here, I want some insurance;' and he said, 'Don't worry; I will carry you; I will transfer you into another company;' that is what he said. On that ground I went and got my policy and handed it to him, but I never did receive another policy of insurance from him or any one else covering my household furniture. The furniture was destroyed by fire on the 11th day of September, 1917, between 6 and 7 o'clock in the evening. That would make it about one month after the conversation I had with Mr. Cooley with reference to the policy—about one month and eleven days. I figure it was about the 1st of August when he talked to me. Mr. Cooley had the policy I surrendered to him; that is, I turned it over to him. I haven't got it myself, and have never seen it since that day. At the time Mr. Cooley came out to the house and I had the discussion with him about taking up the policy, nothing was said about the premium on the policy which I delivered back to him; there was not a word said about that at all. The first time there was any mention made about the unearned portion of the premium on this policy was about a week after the fire."

On cross-examination he further said:

"Mr. Cooley told me that the company had instructed him to cancel the policy—that was my understanding. After he told me he would put

me in another company I surrendered the policy to him. I went in and got it and gave it to him. It was in the bedroom, and I went and got it and gave it to him. It was my understanding the policy was to be canceled and another policy taken out in another company. Mr. Cooley told me that he would get me another policy in another company, and it was my understanding that he was going to apply the unearned premium of this policy to the new one. I thought that that was later than the 18th day of July, but that might be the right date. The fire occurred on the 11th of September. In the meantime I did not go down to see if he had secured another policy for me, because I took his word that he would send me the policy the same as he had always done. I relied on him to secure the other insurance."

Mr. Cooley was the company's agent, and his version of the matter was this:

"About the 18th of July, last year, I received notice from the Insurance Company of North America to cancel this policy. Mr. McWilliams had this policy at that time. We received notice to cancel somewhere between 30 and 40 policies for different reasons for this company on property at the Heights. They were drawing in their lines, and wanted to reduce the amount of their insurance at the Heights, and this was one of the number, and I took the letter signed by the special agent of the company to Mr. McWilliams at his home, and told him about it, and gave him the letter in his hand to read, so he did not have to take my word for it; it was the company's instructions. He read the letter. He acceded to the request for cancellation. He remarked, 'Well, I would not like to be without insurance.' He went right in the house and got me the policy. I did not go in the house; I remained on the gallery. He went in and got the policy, and cheerfully gave it to me for cancellation. He told me he would like to be insured and was to come in our office; he goes by there every day to work; he was to come in our office, and see what we could do for him. I told him I would see. I told him I would see whether or not there was some other company in our office that could write it for him.

"He did not make any demand for the unearned premium. It was understood he should come in our office, when he would either have credit or get his unearned premium. It would be there, of course, at his disposal. He could have credit on the other insurance if it was issued; he could get his money. The credit stands there now. He agreed to do that."

He further testified that the policy was canceled and returned to the company's general office in Atlanta, Ga., on the date of its cancellation, which was July 18, 1917.

In this state of the evidence the appellant contended below that judgment should have gone in its favor, in that the uncontroverted proof showed a cancellation by mutual agreement, a voluntary surrender of the policy for that purpose by the appellee without payment to, or demand by, him for the unearned premium, as well as a waiver upon his part

218 S.W.—6

of any claim to the tender or return of such premium as a condition precedent to the cancellation.

We think the position was correct, and should have been sustained; there is no room for interpretation or difference as to what transpired here; both parties plainly state it. Mr. McWilliams received the company's notice of cancellation, immediately acquiesced therein, and surrendered the policy for such disposition without demand for a refund of the overpaid premium, accepting instead and depending wholly upon the agent's assurance about procuring other insurance for him, and understanding at the time that this balance due him would be applied upon his new policy.

Under facts not so strong in favor of cancellation, and construing the same standard provision relating to it as is here involved, our Supreme Court, through the Commission of Appeals, in the very recent case of Insurance Co. v. Polemanakos (Com. App.) 207 S. W. 922, decided since the judgment herein was rendered, and of which accordingly the court in trying this cause did not have the benefit, held that neither tender nor payment of the unearned premium was a necessary prerequisite to cancellation, properly given notice alone being sufficient, and that Polemanakos agreed to the cancellation and waived repayment of the unearned premium. There was not even a surrender of the policy in that case at all. Polemanakos was advised by the agent over the telephone that the company had canceled his insurance, and was asked to surrender the policy. He said, "All right," that he would procure other insurance, which he later in fact did; but he never gave up the policy, and, after the fire had subsequently occurred, brought his suit to recover thereon. The court in its opinion reviews the authorities on the subject, including those in Texas holding a contrary doctrine—upon which the appellee here relies—and nothing further is deemed necessary in this case than a reference to that discussion; but it may be well to likewise say here, as the court did in the case referred to, that if there be doubt as to whether a tender or repayment of the unearned premium was a necessary condition precedent to cancellation, it would not control the result in this instance, because the facts recited clearly show an agreement to cancellation and a waiver of the return at that time of the premium. See, also, Miller v. Fireman's Ins. Co., 54 W. Va. 344, 46 S. E. 181; Hillock v. Traders' Ins. Co., 54 Mich. 531, 20 N. W. 571.

Since these conclusions determine the merits of the cause, other questions presented become immaterial; the trial court's judgment is reversed, and the cause is here rendered in appellant's favor.

Reversed and rendered.