CIGNA INSURANCE COMPANY OF TEXAS and CIGNA Property and Casualty Insurance Company, Appellants,

v.

Helen Lucile JONES and Eugene Tutt Jones, Appellees.

No. 13–91–260–CV.

Court of Appeals of Texas, Corpus Christi.

March 4, 1993.

John Milano, Jr., Richard J. Reynolds, III, Susan Stone, Thornton, Summers, Biechlin & Dunham, Robert L. Guerra, Thornton, Summers, Biechlin & Dunham, McAllen, for appellants.

Keith C. Livesay, Douglas S. Malany, Barron, Orendain, Malany & Flanagan, for appellees.

Before KENNEDY, SEERDEN and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

KENNEDY, Justice.

An insurance company appeals from a judgment declaring that its policy insuring a liquefied petroleum gas (LPG) appliance shop remained in effect. The judgment rendered CIGNA[1] liable to Helen Lucile Jones and Eugene Tutt Jones for the policy limit of $300,000 (plus interest, attorneys' fees, and costs) for personal injuries and property damages suffered because of a fire resulting from a repairman's negligence. The trial court based its judgment on a conclusion that courts should invoke public policy to extend the law to fill a gap in the licensing procedures of the Texas Railroad Commission (Commission) governing insurance coverage for companies working with LPG. We reverse and render judgment.

The trial was held on stipulated evidence. All facts discussed below come from the trial court's findings of fact in this case except where noted. Caravan Tours, Inc. d/b/a A & H RV Discount (Caravan) engaged, at least in part, in the business of selling and/or servicing and/or repairing LPG appliances. Caravan applied to the Commission for an LPG license. As part of its application, Caravan had to demonstrate that it had insurance.

State law requires the Commission not to issue or renew an LPG license unless the applicant provides proof of coverage with an authorized insurance carrier. TEX.NAT. RES.CODE ANN. § 113.097(a) (Vernon Supp. 1993).[2] The law further provides that a certificate of insurance shall be filed with the Commission's LPG division before license approval or renewal, and shall remain on file during the license period. TEX. NAT.RES.CODE ANN. § 113.098(a) (Vernon Supp.1993). The certificate of insurance is continuous in duration, so licenseholders need not renew the certificates when they apply for license renewal. TEX.NAT.RES. CODE ANN. § 113.098(b) (Vernon Supp.1993). Cancellation of the certificate is effective upon occurrence of one of five events, two of which are raised by the parties here: division receipt of written notice stating the insurer's intent to cancel the policy or voluntary surrender of the license. TEX.NAT. RES.CODE ANN. § 113.098(c) (Vernon Supp. 1993).

---

1. Appellant is actually C.I.G.N.A. Insurance Company of Texas and C.I.G.N.A. Property and Casualty Insurance Company.

2. The law provides alternate methods of complying with this requirement that are not relevant here.

In August of 1982 and 1983, Aetna Insurance Company[3] issued a one-year insurance policy (CG 20 97 71) on Caravan with liability limits of $300,000. In August 1983, Aetna executed and filed with the Commission a certificate of insurance regarding Aetna's coverage of Caravan under policy number CG 20 97 71. Aetna did not file a new certificate of insurance in 1984. In August 1984, INA of Texas[4] issued a one-year insurance policy (G 06080856) on Caravan. In August 1985, INA issued a one-year insurance policy (G 07843501) on Caravan with a liability limit of $500,000. INA never filed a certificate of insurance on these policies. On May 22, 1986, however, INA cancelled insurance policy number G 07843501 for non-payment of premiums.

Each September from 1981–1986, the Commission granted Caravan's application for renewal of the license. In 1987, however, Caravan did not timely apply for renewal. The Commission notified Caravan on September 1, 1987, that its license had expired and that it must immediately cease operations that required an LPG license. On September 14, 1987, Caravan applied for a license. On September 25, 1987, the Commission rejected Caravan's application because the commission's files contained no evidence that Caravan had the necessary insurance.

On December 30, 1987, an LPG explosion and fire occurred involving the Joneses' motor home.[5] The Joneses prevailed in a suit that alleged negligence against Caravan and its employees in furnishing LPG services to the motor home. The trial court awarded $500,000 in damages against Caravan.

On March 1, 1988, the Commission informed Caravan that it would not renew Caravan's LPG license, again for lack of proof of insurance. On May 9, 1988, John Moore, on behalf of Aetna Insurance Company, filed with the Commission a notice of insurance cancellation relative to policy number G 07843501. The notice listed an effective date of August 28, 1982, a cancellation date of June 10, 1988, but a note that the policy had been actually cancelled on May 22, 1986, for nonpayment of premium. The policy number on the certificate was Aetna's CG 20 97 71, which was last renewed for one year ending on August 28, 1984, and not the INA policy number G 07843501 given on the notice of cancellation. Thus, though the INA policy appears to be effectively the successor to the Aetna policy on the certificate, the notice of cancellation technically notified the Commission of the cancellation of a policy on which there was no certificate.

After prevailing against Caravan, the Joneses sought a declaratory judgment that CIGNA was liable on the policy under the certificate still on file with the Commission. The trial court concluded that the LPG licensing statutes should be interpreted broadly to protect the public. The court concluded that, because Aetna had not notified the Commission regarding its cancellation of the insurance policy on Caravan, the certificate of insurance in the Commission's files at the time of the fire bound CIGNA to pay under the terms of the listed 1982 policy. The court declared that CIGNA

3. On December 31, 1987, Aetna changed its name and became CIGNA Property & Casualty Insurance Company, one of the appellants herein.

4. On January 31, 1988, INA of Texas became CIGNA Insurance Company of Texas, the other appellant herein.

5. The trial court in this case and in the underlying suit against Caravan made no finding of fact regarding the date Caravan performed the service that led to the explosion and fire. We assume that Caravan performed the service on December 30, 1987, based on two documents. Appellants' brief states, "The incident made the basis of Appellees' suit for personal injuries oc-

curred on December 30, 1987...." This is unchallenged, so under Tex.R.App.P. 74(f), we accept that as the date Caravan performed the service. The second document is the Joneses' original petition in the underlying suit against Caravan (a copy of which is attached as Exhibit B to their first amended original petition in the record of this case). In the underlying suit, the Joneses alleged that "[o]n or about December 30, 1987, at Defendant's place of business ... the Defendant, its agents, servants and employees, removed said furnace, but, failed to turn the propane gas valve off." This supports our conclusion that the work as well as the explosion and fire occurred on December 30, 1987.

was liable to the Joneses for $300,000 under Aetna policy number CG 20 97 71 (the policy on the certificate), plus interest.[6]

By point of error two in its amended brief, CIGNA charges that the trial court erred by misapplying the law in finding that the certificate of insurance extended coverage even though the underlying insurance policy had been cancelled. The Joneses reply with the argument that the trial court adopted. They argue that the insurance requirements are remedial statutes designed to protect the public, and as such should be construed liberally to accrue that remedial effect, citing several cases.[7] The Joneses argue that, to give effect to the insurance requirement for licensing, cancellation of a policy should not be effective until the certificate is cancelled. The perpetual nature of the certificate could leave the Commission relying on the certificate to believe that the licenseholder is insured when in fact the underlying policy has expired. That scenario occurred in this case when INA cancelled the policy on May 22, 1986, but did not notify the Commission of the policy cancellation, thus allowing Caravan to remain uninsured but licensed through August 31, 1987. The Joneses contend that the trial court acted correctly in imputing a requirement that the insurance company notify both the insured and the Commission to effectively cancel a policy. That conclusion closes the

gap allowing uninsured licensees and furthers the public policy of ensuring that licensed LPG repair shops are covered by insurance.

The Joneses cite laws in many other states to support their interpretation.[8] The persuasiveness of these cases for interpreting the statute before us is limited, however, because each of those courts interpreted a statute that explicitly required the insurance company to notify both the insured and the governmental agency before cancellation of the insurance *policy* was effective. The statute before us addresses cancellation of the insurance *certificate.* The cases are less an argument for an interpretation of the statute before us than they are an argument for a new statute. If a gap exists in the Texas statute, we leave it to our legislature to fill it.

Though the Joneses' argument is articulate and well-reasoned, we are not persuaded that the facts before us warrant the extension of law the trial court found. We are disturbed by the statutory gap which allowed Caravan to retain its LPG license from May 22, 1986, to August 31, 1987, despite cancellation of the mandatory insurance coverage. Public policy favors a statutory interpretation that protects persons injured by licenseholders by holding an insurer liable on a cancelled insurance policy that underpinned a certificate and

---

6. This holding does not mesh entirely with the findings of fact and underscores the technical complexity of the factual situation. The court held that the failure to notify the Commission to cancel the certificate of insurance on Aetna policy number CG 20 97 71 extended coverage to Caravan even though the policy itself had been cancelled for nonpayment of premium. Actually, as the court found in its findings of fact, it was INA policy number G 07843501 that was cancelled for nonpayment of premiums. The policy on the certificate, Aetna policy number CG 20 97 71, was a one-year policy that was not renewed but was replaced in 1984 by INA policy number G 06080856, which was in turn not renewed but replaced in 1985 by the $500,000 INA policy number G 07843501 that was cancelled in May 1986 before its one-year term expired in August 1986.

7. *Board of Insurance Commissioners v. Great Southern Life Ins. Co.,* 239 S.W.2d 803, 809 (Tex. 1951); *Hamaker v. American State Ins. Co. of*

*Texas,* 493 S.W.2d 893, 895 (Tex.Civ.App.— Houston [1st Dist.] 1973, writ ref'd n.r.e.); *Manuel v. Spector,* 712 S.W.2d 219, 222 (Tex.App.— San Antonio 1986, no writ); *Commercial Standard Ins. Co. v. Caster,* 59 S.W.2d 931, 934 (Tex. Civ.App.—Waco 1933), *rev'd on other grounds,* 125 Tex. 48, 81 S.W.2d 487 (Tex.Comm'n App. 1935, opinion adopted).

8. The Joneses cite these cases: *Amalgamated Cas. Ins. Co. v. Winslow,* 135 F.2d 663 (D.C.Cir. 1943); *White v. Great American Ins. Co. of New York,* 343 F.Supp. 1112 (M.D.Ala.1972); *Heuer v. Truck Ins. Exchange,* 51 Cal.App.2d 497, 125 P.2d 90 (Cal.App.1942); *Travelers Ins. Co. v. Hawaii Roofing Co.,* 64 Haw. 380, 641 P.2d 1333 (Haw.1982); *Maryland Cas. Co. v. Baker,* 304 Ky. 296, 200 S.W.2d 757 (Ky.1947); *Nationwide Mutual Ins. Co. v. Davis,* 7 N.C.App. 152, 171 S.E.2d 601 (N.C.App.1970); *Allstate Ins. Co. v. Hale,* 270 N.C. 195, 154 S.E.2d 79 (N.C.App. 1967); *National Service Fire Ins. Co. v. Jordan,* 258 S.C. 56, 187 S.E.2d 230 (S.C.1972).

the license if the insurer cancelled the policy without also notifying the Commission to cancel the certificate. We do not face that situation, however.

Instead, we are confronted with Caravan, which continued to perform LPG-related repairs despite having no insurance and no license, despite having been told by the Commission to stop all LPG-related activities for which a license was required, and despite having its application for license renewal rejected for failure to file proof of insurance. We will not stretch the statutory language and impose liability on CIGNA for failing to perform a duty not explicitly required by statute in order to compensate the Joneses for the act of a renegade repair shop. The statutory requirement of the certificate of insurance was designed to assist the Commission in its licensing procedures. Caravan's acts which injured the Joneses occurred when Caravan's license had expired and the Commission had rejected the application for license renewal for lack of insurance. Had CIGNA notified the Commission upon cancellation of the policy to cancel the certificate, the Commission would likely have cancelled Caravan's license. Such action apparently would not have prevented the Joneses' injuries, however, since Caravan's repair activities were not deterred by its lack of a license.

We find that the trial court erred in imputing a dual notification requirement and concluding that an uncancelled certificate of insurance on file at the Commission binds an insurer to cover an unlicensed LPG appliance repair shop. While the license is revoked, the underlying certificate of insurance does not extend the terms of the insurance policy certified therein if that policy has been properly cancelled between the parties. We sustain point of error two. This action renders unnecessary our consideration of point of error one.

We reverse the judgment of the trial court and render judgment that CIGNA is not liable under the certificate of insurance on the terms of policy number CG 20 97 71.