TRUCK INSURANCE EXCHANGE,
Appellant,

v.

E.H. MARTIN, INC., Individually and
d/b/a E & M Construction Co.; Ernest
Martin, Individually and d/b/a Ernest
Martin Trucking Co.; and Terry J. Law-
ley, Appellees.

No. 10–93–163–CV.

Court of Appeals of Texas,
Waco.

May 11, 1994.

Rehearing Denied June 8, 1994.

Julia F. Pendery, Cowles & Thompson,
P.C., Dallas, TX, for appellant.

William J. Collins, III, and Michael C.
Falick, Kirkendall & Collins, Houston, TX,
for appellees.

Before THOMAS, C.J., and CUMMINGS
and VANCE, JJ.

OPINION

VANCE, Justice.

Truck Insurance Exchange (Truck) ap-
peals the trial court's denial of a summary
judgment in its favor and the granting of a
summary judgment to Appellees, defendants
below, (collectively Martin). The case in-
volved an insurance coverage dispute arising
from Truck's alleged cancellation of Martin's
commercial automobile policy for non-pay-
ment of premiums effective May 31, or alter-
natively June 20, both dates prior to the
automobile accident in question, which was
the basis of the underlying case. Also in-
volved in this appeal is the applicability in
this instance of the Texas Railroad Commis-
sion rules regarding notice of cancellation.

Martin has asserted two cross-points—(1)
that the trial court erred in denying its re-
quest for attorney's fees incurred in defense
of the declaratory judgment action and (2)
that the court erred in refusing to order
Truck under article 21.55 of the Texas Insur-
ance Code to reimburse Martin for attorney's
fees and costs incurred in defending this
appeal.

Truck relies primarily on the language re-
garding cancellation in the auto policy itself,
which provides that Truck could cancel the
policy by mailing or delivering to the named

insured written notice of cancellation, stating the reason for cancellation (the failure to pay premiums, in this case), at least ten days prior to the effective date of cancellation. Martin obtained replacement coverage with Harco Insurance Company (Harco) effective June 20, 1991, prior to the accident. Harco sent a Certificate of Insurance to the Railroad Commission reflecting auto liability coverage for Martin effective June 20, 1991. The Harco Certificate was accepted by the Railroad Commission. According to Truck's declaratory judgment petition, Truck's cancellation was effective on June 20, the same date that the Harco Certificate became effective, well prior to the July 13 accident.

The primary issue in this appeal is whether Martin's policy with Truck had been effectively cancelled before the accident by the Railroad Commission's acceptance of the Harco Certificate of Insurance or whether Truck is obligated to provide what would essentially be double coverage for the accident. Although Truck admitted that it had not complied with the cancellation terms of an endorsement to the policy concerning cancellation *of the endorsement* (Form F)—by giving the Railroad Commission thirty days' notice of endorsement cancellation—it claims it was exempt from compliance by a Railroad Commission regulation.

In points one and two, Truck complains that the trial court erred in granting Martin's motion for summary judgment and in failing to grant Truck's motion for summary judgment. In its third point of error, Truck asserts that, even if the trial court did not err in finding that Martin's policy with Truck was not cancelled before the accident, the trial court's summary judgment order granted relief not requested by Martin and not supported by the summary judgment pleadings and evidence.

We will reverse the summary judgment granted in favor of Martin against Truck and grant the summary judgment which should have been rendered in favor of Truck.

## FACTUAL BACKGROUND

*The Accident and Underlying Suit*

On July 13, 1991, an employee of Martin was involved in a truck accident on the Gulf Freeway in Houston. Mr. and Mrs. Salazar were the driver and the passenger of the vehicle which was rear-ended by the eighteen-wheel Martin vehicle driven by Martin employee Terry Lawley. Lawley was acting in the course of his employment at the time of the accident. The Salazar vehicle then rear-ended the Scolton vehicle, injuring its driver and passenger, Jennifer Procell and Lori Scolton.

The Salazars sued Martin and Lawley, and the Scoltons intervened. Counsel provided jointly by Harco and by Truck defended Truck in both the Salazar action as well as in the Scolton intervention. Both actions were settled by Harco's payment of $725,000 on behalf of Martin and Lawley. Truck did not participate in the settlement.

Truck filed a declaratory judgment action against Martin, seeking a declaration that it had no duty to defend or indemnify Martin in the Salazar–Scolton matter because Martin's policy had been cancelled by Truck before the accident, although Truck admitted that it had not complied with the cancellation terms of an endorsement to the policy. Truck claimed that it was exempt from compliance by Railroad Commission regulation, Rule 5.185. Martin disagreed.

Truck and Martin filed cross-motions for summary judgment on the coverage question. The court heard the summary judgment motions on May 6, 1993, and signed the order granting Martin's summary judgment on July 20. Truck had no opportunity to affect the contents of the order because its counsel did not receive a copy of Martin's proposed order until July 28. Truck received its proposed order back and only learned on August 4 that the court had signed Martin's order. Although Truck immediately mailed a motion to modify, the court's plenary power had expired before it was filed.

Truck argues that the order in its present form fails to conform to the pleadings and the evidence and fails to reflect the judgment rendered in the following respects:

a) The order declares that Truck had a duty to defend and indemnify Martin for the Salazar and Scolton actions for the

"$735,000.00" paid to settle those claims. The amount of the settlement was $725,000, and that amount exceeds the $500,000 Truck policy limits. Martin admits that the order signed by the trial court contained a typographical error and that the proper amount to be indemnified should have been $725,000. The judgment also failed to take into account the policy provision requiring coordination of the two policies, which the court found to be in effect at the time of the accident; b) The order expressly stated that the settlement of the underlying case was reasonable. Truck claims that no evidence was presented concerning the reasonableness of the settlement; that the only issue before the court at the summary judgment hearing was whether the Truck policy had been effectively cancelled before the accident; and c) Truck pleaded two policies (the auto policy and the "umbrella" policy), while Martin's motion for summary judgment sought only a declaration of coverage under the auto policy. The trial court's order did not specify the policy under which Truck's duty to defend and indemnify Martin arose.

### Three Insurance Policies

#### 1. Truck's Business Automobile Policy

Truck had insured Martin's trucking business since 1985. It issued a business automobile policy, number 7577 36 24, for the policy period of July 21, 1990, to July 21, 1991, to E.H. Martin, Inc. d/b/a E & M Construction Company (the "auto policy"). Endorsement TE 0032A governing cancellation of the policy and of Endorsement Form F, which provided the mandatory insurance coverage required by the Railroad Commission, was attached to the policy and filed with affidavits in support of Truck's motion for summary judgment.

#### 2. The Umbrella Policy

Truck issued a Texas Umbrella Liability Policy to Martin d/b/a E & M Construction Company for July 21, 1990, to July 21, 1991. This policy, attached to Truck's motion for summary judgment as an exhibit, was not mentioned in the trial court's order. Martin has not disputed that Truck effectively cancelled the umbrella policy under the policy's own terms on May 31, 1991, prior to the July 13 accident. Martin made no claim for coverage under the umbrella policy in its motion for summary judgment in the trial court.

#### 3. The Harco Business Automobile Policy

Harco issued a business automobile policy to Martin, effective June 20, 1991. On July 12, 1991, the day before the accident in question, Harco executed a Form E, Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance, and transmitted it to the Railroad Commission. The Railroad Commission accepted it effective June 20, 1991, as providing the mandatory coverage for Martin.

### STANDARD OF REVIEW

The standards for reviewing a summary judgment are well-established. *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548 (Tex.1985). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to the summary judgment as a matter of law. *Id.* Every reasonable inference must be indulged in favor of the non-movant and all doubts resolved in its favor. *Id.* Evidence which favors the movant will be considered only if it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

In reviewing a typical summary judgment with the defendants as movants, we must determine whether the defendants met their burden by establishing that no genuine issue of material fact exists. *See Nixon*, 690 S.W.2d at 548. A defendant moving for summary judgment without asserting an affirmative defense must disprove as a matter of law one or more of the elements essential to the plaintiff's cause of action. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991).

When both parties move for summary judgment, as in the present case, each party must carry its own burden, and neither can prevail because of the failure of the other to discharge its burden. *Federal Dep. Ins. Corp. v. Attayi*, 745 S.W.2d 939, 941 (Tex.

App.—Houston [1st Dist.] 1988, no writ); *The Atrium v. Kenwin Shops of Crockett, Inc.,* 666 S.W.2d 315, 318 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Hittner and Liberato, Summary Judgments in Texas,* 35 S.Tex.L.Rev. 9, 46 (1994) (hereinafter *S.J. in Texas* ). When both parties move for summary judgment and one motion is granted and the other overruled, all questions presented to the trial court may be presented for consideration on appeal, including whether the losing party's motion should have been overruled. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400–01 (1958); *S.J. in Texas* at 46. On appeal, the party appealing the denial of its motion for summary judgment must properly preserve the error by raising as a point of error the failure of the trial court to grant the appellant's motion. *Buckner Glass & Mirror Inc. v. T.A. Pritchard Co.,* 697 S.W.2d 712, 714–15 (Tex.App.—Corpus Christi 1985, no writ); *Holmquist v. Occidental Life Ins. Co. of California,* 536 S.W.2d 434, 438 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *S.J. in Texas* at 46. In the case of cross-motions for summary judgment, an appellate court may reverse an improperly granted summary judgment and render summary judgment for the opposing party, thus securing on appeal a final resolution of the entire case. *S.J. in Texas* at 47; *Hall v. Mockingbird AMC/Jeep, Inc.,* 592 S.W.2d 913 (Tex. 1979).

Both Truck and Martin had the burden of showing, in their respective motions for summary judgment, that they were entitled to summary judgment as a matter of law. Thus, the trial courts had the power to declare the law as it applied to the Truck auto policy and any cancellation of that policy. *See* Tex.R.Civ.P. 166a(c). Summary judgment in favor of Martin was proper only if there was no genuine issue of material fact negating at least one element of Truck's cause of action. *See Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20 (Tex.1990); *Traylor v. UnitedBank Orange,* 675 S.W.2d 802, 804 (Tex.App.—Beaumont 1984, writ ref'd n.r.e.). The trial court's determination of the applicable law and its application to the facts at hand to find coverage under the Truck auto

policy involved statutory construction of Railroad Commission Rule 5.185, a question of law. *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989).

## POINTS OF ERROR

Truck contends in points one and two that the court erred in granting Martin's summary judgment and in failing to grant Truck's motion. Truck points out that the main body of the policy (excluding the endorsement coverage described below) can be effectively cancelled by sending written notice ten days prior to the effective date of cancellation, if the reason for cancellation is non-payment of premiums. (See Endorsement TE 0032A–TR). When Martin failed to pay the premium due, Truck cancelled the policy under this provision, by letter dated May 16, 1991, effective May 31, 1991.

The Texas motor carrier laws require mandatory insurance coverage for truckers traveling on public highways, and a certificate referring to that coverage was attached to the policy as Form F. Tex.Rev.Civ.Stat. Ann. art. 911b, § 13 (Vernon Supp.1994). Form F provides that it cannot be cancelled without cancellation of the policy itself and that such cancellation may be accomplished by the company or the insured giving thirty days' notice in writing to the Railroad Commission, the thirty days to run from the date the notice is actually received in the Commission's office. However, this cancellation procedure is not required if another insurance company has insured the common carrier with replacement coverage. 16 Tex. R.R.Comm'n, Tex.Admin.Code § 5.185 (1991). Truck did not send notice of cancellation of endorsement Form F to the Railroad Commission until after the Salazar–Scolton accident had occurred. It is Truck's position that Rule 5.185 of the Railroad Commission applied to alleviate the notice requirement to the Commission, and that Truck owed no further duty to Martin under Texas law after Harco's replacement policy became effective.

Martin asserts that the trial court properly determined that Truck owed coverage and the costs of defense for the Salazar accident

according to policy # 7577 36 24. Martin relied on two grounds to obtain summary judgment. It alleged that the Truck auto policy was in effect on July 13, 1991, by its express terms, and that Truck failed to follow the mandatory procedure prescribed for the cancellation of the policy prior to the accident. Although the trial court's order did not specify which of Martin's theories it adopted in granting summary judgment, Truck argues that neither theory entitled Martin to summary judgment as a matter of law, because the endorsement was cancelled by operation of law before the accident when Harco's replacement coverage became effective.

■ Martin contended that coverage existed under the express terms of the Truck auto policy, and alternatively, that coverage by Truck existed because of Truck's alleged failure to follow the mandatory procedure prescribed for the cancellation of its endorsement prior to the accident. We disagree. There is no question that the Harco policy was in effect at the time of the accident. The Railroad Commission recognized Harco's policy covering Martin as of June 20, 1991, and Truck was excused from giving the requisite thirty days' notice to the Railroad Commission. *See id.* Harco not only defended but alone settled with Martin.

■ Furthermore, Truck complied with its own policy provisions regarding cancellation. Form F served only to amend the policy to provide the mandatory insurance for auto bodily injury and property damage liability in accordance with state motor carrier law or regulations promulgated by any state commission having jurisdiction, to the extent of the coverage and limits of liability.

The cancellation provision at issue in this case, section three of Form F, states that *the endorsement* may not be cancelled without cancellation of the policy to which it is attached. Although Truck admits that it did not send notice of cancellation of the endorsement and policy to the Railroad Commission until after the accident, nevertheless, by the terms of endorsement Form F itself, the only portion remaining to be cancelled by giving thirty days' notice to the Railroad Commission was Form F—the endorsement.

The policy itself had been cancelled by its own terms for non-payment of premiums.

To understand what Form F required, one must look to the state motor carrier laws and regulations issued by the Railroad Commission to determine what are "the coverage and limits of liability required thereby" and to the rules regarding cancellation of endorsement Form F, specifically Rule 5.185. Because the trial court apparently accepted Martin's argument that Form F required thirty days' notice of cancellation to the Railroad Commission before the policy could ever be effectively cancelled, the trial court did not address the applicability of Rule 5.185 as it pertained to the Form F cancellation.

The Motor Transportation Regulations of the Railroad Commission contain the following exception to the thirty days' cancellation notice requirement to the Commission. It is this exception on which Truck relies:

Section 5.185

TERMINATION. *Except when replaced by another acceptable policy or certificate of insurance,* surety bond, proof of qualifications of self-insurer ... no surety bond, policy, or certificate of insurance or other security or agreement shall be cancelled or withdrawn until after thirty days notice in the form prescribed by the State Board of Insurance has been given to the Commission by the insurance company or surety or sureties.

16 Tex.R.R.Comm'n, TEX.ADMIN.CODE § 5.185 (1991) (emphasis added).

Under this Railroad Commission rule, the thirty days' notice of cancellation requirement does not apply when a certificate of insurance is replaced by another acceptable policy or certificate of insurance, thus triggering termination of endorsement Form F as soon as the Commission accepted Harco's replacement policy. Rule 5.185 excuses the thirty-day notice requirement once replacement coverage becomes effective, assuming ultimate approval by the Railroad Commission; therefore, the "laws and regulations" promulgated by the Railroad Commission were complied with once Harco's policy was accepted. It is undisputed that the Railroad Commission accepted Harco's replacement

certificate of insurance effective June 20, 1991. The uncontroverted summary judgment testimony of Charles E. Miller, Supervisor of the Insurance Section of the Railroad Commission, established that the Commission had accepted Harco's certificate of insurance effective June 20, 1991. He testified that the Railroad Commission records reflect that Harco's certificate of insurance was in effect on July 13, 1991, the date of the accident. He also testified that the purpose of Rule 5.185 is to allow an insurance company which overlooked sending a Form K cancellation notice to the Commission to "get out" of the thirty-day notice requirement as long as the new insurance carrier had filed evidence of its coverage with the Commission. Miller further testified that the Railroad Commission recognized the June 20, 1991, effective date of Harco's policy and that a previous carrier is allowed to cancel coverage effective the same date that the new insurance carrier's coverage went into effect. Harco obviously believed it was the replacement insurer prior to the accident, as evidenced by its payment of $725,000 on Martin's behalf.

The plain language of Endorsement F only required Truck to provide the compulsory insurance to Martin for thirty days "in accordance with the rules" of the Railroad Commission. The Commission itself promulgated the rule which excuses an insurance company from compliance with the cancellation notice requirement on its compulsory coverage if a new insurance company has assumed the risk. Truck was excused from compliance with the specific terms of Endorsement F attached to its policy. *See id.*

Because we reverse the summary judgment in favor of Martin and grant Truck's motion for summary judgment, we do not reach Truck's point three or Martin's cross-points.

### CONCLUSION

We sustain points one and two. We reverse the summary judgment in favor of Martin and render summary judgment for Truck, declaring that it had no duty to defend or indemnify Martin or Lawley for the Salazar–Scolton lawsuit.