In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00097-CV


______________________________




RANGER INSURANCE COMPANY, Appellant



V.



JOHN WARD, ET AL., Appellees




 


On Appeal from the 102nd Judicial District Court


Red River County, Texas


Trial Court No. 203-CV-8-98-A




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Ranger Insurance Company ("Ranger") appeals the trial court's judgment regarding the
enforceability of a purported release between Ranger and its insured ("the Release"). Appellees,
John Ward, et al., are injured third-party landowners ("Landowners"). On competing motions for
summary judgment, the trial court determined the policy in effect at the time of the loss in 1991
remained in effect despite the insurer's and insured's attempt to retroactively cancel the policy in
1996.

FACTUAL AND PROCEDURAL HISTORY

 On March 19, 1991, Ranger issued policy number IAU03278 to Thompson Flying Services,
Inc., owned by Jesse Thompson. This policy brought Thompson Flying Services into compliance
with financial responsibility laws governing the commercial application of herbicides and pesticides. 
See Tex. Agric. Code Ann. § 76.111. (1) On June 26, 1991, operating under this liability policy,
Thompson Flying Services applied a potent herbicide by aerial application to the Smith Trust Ranch
in Franklin County. The herbicide drifted across the county line onto a large portion of 3,400 acres
of land in Red River County owned by Landowners, destroying a growing cotton crop and preventing
Landowners from planting a crop the following season. On April 29, 1992, Landowners sent letters
to Thompson and Ranger, notifying them of the results of the investigation by the Texas Department
of Agriculture (the "Department"). On May 5, 1992, Ranger sent Thompson a reservation of rights
letter. In May 1992, Landowners filed suit against Jesse Thompson, Thompson Flying Services,
Inc., and certain other defendants in cause number 118-CV-5-92 in the 102nd Judicial District Court
of Bowie County, Texas. 

 On January 19, 1996, Thompson and Ranger entered into the Release, under which
agreement Ranger paid Thompson $100,000.00 in exchange for his retroactively releasing Ranger
from its obligations under the policy as of the date of issuance. Neither party notified the
Department of the Release, as required by the Texas Agriculture Code. 

 In a letter dated March 1, 1996, counsel for Landowners wrote to Ranger in an attempt to
settle for policy limits plus court costs, alerting Ranger to the amount of damage to the Landowners'
crops and referring to Ranger's duty under Stowers. (2) The letter also asserted that the Release is void. 
In  response  to  this  letter,  Ranger's  counsel,  Bruce  C.  Gaible,  wrote  to  Landowners'  attorney
on March 22, 1996, relaying Ranger's "confusion" as to why Landowners made reference to the
policy since Ranger and Thompson had agreed to cancel it retroactively. 

 In 1996 Thompson filed for bankruptcy in cause number 96-60464 in the Eastern District of
Texas, incident to which he assigned to Landowners all rights and claims he might have against
Ranger. In June 1998, Landowners recovered a post-answer default judgment in the Thompson
litigation in the amount of $2,394,479.51 with prejudgment interest of $1,576,688.00 and
postjudgment interest of ten percent per annum. Landowners then filed an action against Ranger,
Thompson's insurer. 

 On May 12, 1999, Ranger sought summary judgment declaring that (1) the Release was
effective to bar any claim for coverage under the policy, (2) Texas law allowed insurer and insured
to mutually cancel an insurance policy in spite of policy and statutory provisions, (3) Landowners
had  no  direct  cause  of  action  against  the  insurer,  and  (4)  the  Stowers  doctrine  did  not  apply. 
On March 17, 2000, Landowners filed a motion for partial summary judgment seeking a declaratory
judgment that the Release was void or voidable on two grounds and seeking attorney's fees. First,
Landowners argued the parties to the Release failed to fulfill a condition precedent to enforceability
of the Release by not giving the requisite notice of cancellation to the Department. Second,
Landowners argued the Release was void as against public policy since the liability insurance was
required by law, all parties had notice of the loss, and the statute clearly designated the class of
persons protected and the type of harm against which it was designed to protect.

 The trial court granted summary judgment in favor of Landowners on both grounds. On
June 14, 2002, the parties entered into an agreed order of severance and abatement, and a final order
was entered. On July, 1, 2002, Ranger filed its notice of appeal. On appeal, Ranger contends the
trial court erred in granting summary judgment in favor of Landowners on both grounds.

 Though we find the failure to give the statutory notice would not, alone, keep the policy in
full force-but, as specified by statute, would have the effect of limiting insurer's liability to the
policy's face amount-we affirm because we find the attempted retroactive release of a liability
insurance policy, after a known claim had arisen, is void based on public policy.

ANALYSIS

Standard and Scope of Review

 We review a summary judgment de novo and affirm only if the summary judgment record
establishes the movant's right to summary judgment as a matter of law. Gibbs v. Gen. Motors Corp.,
450 S.W.2d 827, 828 (Tex. 1970). When both parties move for summary judgment, each party bears
the burden of establishing it is entitled to judgment as a matter of law. See Guynes v. Galveston
County, 861 S.W.2d 861, 862 (Tex. 1993); Am. States Ins. Co. v. Arnold, 930 S.W.2d 196, 200 (Tex.
App.-Dallas 1996, writ denied). When both sides file motions for summary judgment and the trial
court grants one motion and denies the other, we consider all the evidence accompanying both
motions to determine whether the trial court should have granted either motion and, on finding error,
we render the judgment the trial court should have rendered. See Jones v. Strauss, 745 S.W.2d 898,
900 (Tex. 1988); Am. States Ins. Co., 930 S.W.2d at 200. If neither movant is entitled to summary
judgment, we must remand the case to the trial court. See Howard v. INA County Mut. Ins. Co., 933
S.W.2d 212, 217 (Tex. App.-Dallas 1996, writ denied).

 Whether a release is enforceable or void is a question of law which we review de novo. 
Ronin v. Lerner, 7 S.W.3d 883, 886 (Tex. App.-Houston [1st Dist.] 1999, no pet.). Statutory
construction is also a question of law. Truck Ins. Exch. v. E. H. Martin, Inc., 876 S.W.2d 200, 203
(Tex. App.-Waco 1994, writ denied). More specifically, a trial court's determination of the
applicable law and whether a statutorily-required insurance policy covers a certain loss involves
statutory construction. See id. 

Financial Responsibility Law

 At the time in question, Section 76.111 of the Texas Agriculture Code required that a
commercial aerial applicator of pesticide maintain a policy of liability insurance in a minimum
amount or provide a surety bond in that same amount. The statute provided in pertinent part: 
"[e]xcept as otherwise provided by this section, the amount of the proof of financial responsibility
may not be less than $5,000 nor more than $100,000 for property damage and may not be less than
$5,000 for bodily injury." Tex. Agric. Code Ann. § 76.111(f). Any party cancelling or requesting
a reduction in the policy must notify the commissioner of the department at least ten days before
taking the action. Tex. Agric. Code Ann. § 76.111(g). Subsection (g) further provided: "If the
party does not give that notice, the liability of the surety or insurer is limited to the bond or liability
insurance policy." Tex. Agric. Code Ann. § 76.111(g). Central to both the interpretation and
application of this statute is the language that expresses the purpose of compulsory insurance in this
activity: "protecting persons who may suffer damages as a result of the operations of the applicant." 
Tex. Agric. Code Ann. § 76.111(a)(2).

Notice as Condition Precedent to Release

 Landowners assert that notice requirements, imposed by statutory and/or policy provision,
represent a condition precedent (3) to a change or cancellation. Therefore, they argue, the Release was
never enforceable because the parties failed to satisfy this condition. Ranger, of course, argues the
Release is enforceable and acts as a complete bar to any recovery. 

 Statutory construction is a matter of law. See Trinity Universal Ins. Co. v. Fid. & Cas. Co.,
837 S.W.2d 202, 204 (Tex. App.-Dallas 1992, no writ). If the statute is unambiguous, we look to
the plain meaning of the words to determine the legislative intent, and we examine the entire statute
to find the legislative intent of a specific provision. Id. Courts favor public interest over any private
interest. Tex. Gov't Code Ann. § 311.021(5) (Vernon 1998). 

 When an insurer and a common carrier agreed to cancel a compulsory insurance policy and
substitute a second policy by another insurer, the court held that the first policy was effectively
canceled despite the insurer's failure to provide requisite notice to the Texas Railroad Commission. 
Auto. Ins. Co. v. S. Transp. Co., 101 S.W.2d 585, 588 (Tex. Civ. App.-Dallas 1937, writ ref'd). 
Noting that the clearly stated purpose of the notice provision was to provide "continuous and
unbroken protection to the public having legal claims against such motor carrier," the court reasoned
that, since the carrier did maintain uninterrupted coverage, the parties had complied with the statute
despite failure to give notice of the cancellation. (4) Id. at 587-88. When the statute did not address
failure to notify and public policy remained served, the insured and insurer could waive the notice
requirements. See id. at 588. The court limited application of this rule to the circumstances in that
case, that is, when the insured and insurer agree to cancel and substitute a compulsory policy. See
id.; Truck Ins. Exch., 876 S.W.2d at 203 (reaching similar conclusion based on application of Texas
Railroad Commission regulations).

 In another case with similar issues, the court reached the opposite outcome. See Trinity
Universal Ins. Co., 837 S.W.2d at 205. Failure to provide notice as required by statute resulted in
the policy remaining in full force and effect. Id. The statute at issue in Trinity, however, specifically
stated that, upon failure to meet the notice requirements, "the coverage shall remain in effect" until
the requisite notice is given. Tex. Ins. Code Ann. art. 21.49-2A(e) (Vernon Supp. 2003). Since
Trinity conceded it failed to give notice, the court applied the statute's unambiguous language to hold
that Trinity's policy was in effect at the time of the loss. Trinity Universal Ins. Co., 837 S.W.2d at
205.

 Here, the applicable statute provides (5)
 that, when the party fails to give the requisite notice,
the liability of the insurer is limited to the face amount of the insurance policy. From this language,
it is apparent the drafters intended the insurer to remain liable only to a limited extent if its failure
was simply that of notice to the Department. From this limitation, it necessarily follows that the
Legislature did not intend the policy to remain in full effect as a result of failure to give notice.

 Ranger argues it complied with the statutorily imposed liability by paying Thompson
$100,000.00 in consideration for the Release of Ranger's obligation. Contrary to Ranger's position,
the statute was intended to have the insurance protect an injured third party rather than just its
insured. The statutory announcement of the intended policy goal is quite clear. Ranger reads the
statute to allow it to remain in compliance by simply buying its way out of a policy by paying its
insured the policy limits in exchange for a release. We do not.

 From the unambiguous language in the statute, the Release cannot act as a complete bar to
recovery as Ranger contends, nor as a condition precedent to a cancellation. Ranger remains liable
in spite of its actions. The statute, however, also makes clear that the extent of the insurer's liability
will not exceed the policy amount, a limitation that relieves an insurer of other duties of an insurer
under a policy that is in full effect. A policy that remains in full force carries various duties, such
as an insurer's duty to defend and its duty as set out by the Stowers (6) doctrine, each duty having the
capacity to cause an insurer's liability to exceed the dollar amount of the policy. The statute does not
reflect legislative intent to continue these duties under a policy, unlike the statutory provision in
Trinity, which stated "the coverage shall remain in effect" until proper notice is given. Trinity
Universal Ins. Co., 837 S.W.2d at 204. So, a cancellation without compliance with the notice
requirements of this former code provision might have been partially effective had the cancellation
otherwise been an enforceable agreement.

 Presumably, the Legislature balanced competing interests by maintaining the minimum
amount of liability insurance to give effect to the statute's policy goal while still offering limited
protection to an insurer who simply failed to meet the notice requirement. The notice requirement
in the statute at issue does not act as a condition precedent, the failure of which could render entirely
void any change or cancellation of a policy.

 Therefore, we conclude that, if Ranger's only problem was failure to give notice, Ranger
would remain liable, albeit to a limited extent, according to the statute. The notice failure, however,
is not all there is. The retroactive release is contrary to public policy, rendering the Release entirely
void and keeping fully intact the policy that was in effect at the time of the loss.

Void as Contrary to Public Policy

 The law favors voluntary settlement of disputes and, thus, will give a properly executed
release legal force. See Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 178 (Tex. 1997);
Schmaltz v. Walder, 566 S.W.2d 81, 83 (Tex. Civ. App.-Corpus Christi 1978, writ ref'd n.r.e.). A
release, just as any other contract, however, is subject to the public policy of the State. See Sacks
v. Dallas Gold & Silver Exch., Inc., 720 S.W.2d 177, 180 (Tex. App.-Dallas 1986, no writ). 

 Whether a contract violates public policy is a question of law, which we review de novo. 
Lawrence v. CDB Servs., Inc., 44 S.W.3d 544, 555 (Tex. 2001); Ins. Co. of N. Am. v. Easton, 73 Tex.
167, 11 S.W. 180, 181 (1889). We determine the validity of a release by considering all the
attendant circumstances at the time of the making. Tricentrol Oil Trading Co. v. Annesley, 809
S.W.2d 218, 221 (Tex. 1991); Houston Oilers, Inc. v. Floyd, 518 S.W.2d 836, 838 (Tex. Civ.
App.-Houston [1st Dist.] 1975, writ ref'd n.r.e.). 

 In examining an agreement to determine if it is contrary to public policy, we look to see
whether the agreement has a tendency to injure the public good. Sacks, 720 S.W.2d at 180. While
we have no standard definition or test that applies to all cases, courts generally find a contract
violates public policy if it is illegal or inconsistent with or contrary to the best interest of the public. 
Locomotive Eng'rs & Conductors Mut. Protective Ass'n v. Bush, 576 S.W.2d 887, 890 (Tex.
App.-Tyler 1979, no writ). A state's public policy is embodied in its constitution, statutes, and the
decisions of its courts. Id.

 In an unpublished case discussed here only for the logic employed, the Dallas Court of
Appeals heard a similar argument from an insurer on similar facts. See Stroop v. N. County Mut. Ins.
Co., No. 05-97-01517-CV, 2000 Tex. App. LEXIS 8082, at *2 (Tex. App.-Dallas Dec. 4, 2000, pet.
denied) (not designated for publication). In Stroop, insured common carrier, Sunset, attempted on
April 1, 1992, to orally cancel the liability insurance policy issued by Northern County Mutual
Insurance Company. Id. Northern County refused to honor this request and sought to collect
premiums for the month of April. Id. at *11. Sunset had an accident on April 7, 1992, prompting
Northern County to decide to honor the prior oral request for cancellation. Id. at *12. Without
having given the required notice to Sunset, Northern County attempted to retroactively cancel the
policy. Id. The injured third parties sued Northern County, and the trial court granted summary
judgment in favor of Northern County. Id. at *2.

 The notice provisions associated with the compulsory insurance statute in Stroop required
that the insurer give at least ten days' notice to the insured, a distinction between the facts in the
instant case, but one that does not warrant a different outcome. Id. at *10. Northern County did not
dispute it failed to give this notice. Id. at *13-14. Instead, it relied, as Ranger does, on the general
proposition that parties can mutually agree to cancel a policy in a way that is inconsistent with the
terms of the policy. The court emphasized that, with respect to this statute, public protection is the
reason for requiring liability insurance. Id. at *14. Northern County's attempt to retroactively cancel
the policy was contrary to public policy and violated the law. Id. Limiting its holding to the facts
in that case, the court held that an insurer and its insured could not mutually agree to cancel an
insurance contract after they knew a loss had occurred injuring intended beneficiaries of the
compulsory insurance. Id. at *14-15.

 Ranger, arguing that the release is enforceable and bars any and all recovery, relies on that
same well-established general rule that a policy of insurance may be canceled or rescinded by mutual
agreement of the parties. See Ins. Co. of N. Am. v. McWilliams, 218 S.W. 80, 81 (Tex. Civ.
App.-Galveston 1919, no writ). Mutual cancellation can be effective independent of the terms of
the contract and notwithstanding a standard policy provision calling for notice before cancellation. 
Argonaut Southwest Ins. Co. v. Amco Mesh & Wire Co., 472 S.W.2d 843 (Tex. Civ. App.-Dallas
1971, writ ref'd n.r.e.). 

 Ranger does not, however, point us to authority to support its proposition that two parties can
agree to cancel a policy after notice of a loss covered by the policy and thereby release its legal
obligations in a manner inconsistent with the intent of the law requiring that insurance. The cases
that delineate the rule on which Ranger relies can be easily distinguished from the facts at hand. In
Argonaut Southwest, the law required the insurer to give notice of cancellation to the insured. Id.
at 847. The court determined this notice provision was designed for the benefit of the insured rather
than the public. Therefore, the court reasoned, the insured was free to waive his right to notice under
the provisions. Id. In Cowley v. Texas Snubbing Control, Inc., 812 F. Supp. 1437, 1446 (1992), the
court noted that the case, unlike the instant case, did not involve compulsory insurance. 

 Both parties point to portions of Cigna Insurance Co. v. Jones, 850 S.W.2d 687 (Tex.
App.-Corpus Christi 1993, no writ), to support their respective positions. Cigna, too, involves
significant distinctions from the facts before us. Cigna examined cancellation of a policy due to
nonpayment of premiums and, in light of the policy's cancellation, construed the statutory
requirements of cancellation of a certificate of insurance that remained on file with the Texas
Railroad Commission. Id. at 690. The Cigna court explicitly points to these distinctive elements. 
Id. Here, we deal with a specific statutory requirement that notice be given when a statutorily
required policy is modified or cancelled.

 Additionally, the statute at issue in Cigna is dissimilar from the Texas Agriculture Code
provision we have before us. Not only does the statute at issue in Cigna concern certificates of
insurance rather than underlying policies, but it also fails to set out the consequences of failure to
cancel the certificate. See Tex. Nat. Res. Code Ann. § 113.098(c) (Vernon Supp. 2003). In the
absence of such legislative guidance, an absence we do not face here, that court held that the
certificate on file with the Texas Railroad Commission did not extend the coverage of the properly
cancelled policy underlying the certificate of insurance. But, as we have said, our situation is
different.

 We study the circumstances surrounding the execution of a release to determine its validity
and examine the entire instrument to determine the parties' intent. Here, Ranger and Thompson
entered into the Release in January 1996. At that point in time, both parties were clearly aware of
the Landowners' claim. Ranger does not dispute this fact, nor could it. So, the circumstances paint
a picture of two parties, both aware of their likely liability for Landowners' claims, entering into a
release in which the two parties attempt to contract away liability and agree to leave the injured
parties without the remedy intended by the statute in question. Ranger now declares it is not liable
under the policy because it agreed it did not want to be liable and paid Thompson $100,000.00 to
accomplish that result.

 We must now decide whether, considering these circumstances, a release of this nature is
contrary to the public's best interest. The public policy goal, as expressed in the former Section
75.014 in the instant case, is quite obvious: (7)
 "protecting persons who may suffer damages as a result
of the operations of the applicant." Tex. Agric. Code Ann. § 76.111(a)(2). While we recognize
that enforcing a release can serve a policy goal by promoting freedom of contract and voluntary
settlements of disputes, the danger in enforcing the Release far outweighs the policy considerations
in enforcing it. Ranger's and Thompson's attempt to circumvent the intent of the required insurance
clearly violates public policy. Both the insurer and insured would benefit from this attempted
manipulation of time, but the injured parties would "suffer adverse effects," losing even the statutory
minimum protection to the scheming of Ranger and Thompson. Such an attempt to avoid legally
imposed duties and to undermine the intent of the laws of the State violates public policy in the most
egregious manner.

Award of Attorney's Fees

 The Uniform Declaratory Judgments Act provides that the court may award "reasonable and
necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009
(Vernon 1997). Granting or denying attorney's fees in a declaratory judgment action lies within the
sound discretion of the trial court. We review this determination for an abuse of discretion. 
Exploration Co. v. Vega Oil & Gas Co., 843 S.W.2d 123, 127 (Tex. App.-Houston [14th Dist.]
1992, writ denied). Where the trial court properly granted summary judgment, it also properly
awarded attorney's fees under Section 37.009 because the record showed no abuse of discretion. 
Ranger, relying on Dorman v. Arnold, 932 S.W.2d 225, 229 (Tex. App.-Texarkana 1996, no writ),
urges the Court to reverse the judgment and award of attorney's fees resulting from the trial court's
error in the application of the law. Since, overall, the trial court did not err in its interpretation and
application of the law, it did not abuse its discretion in awarding attorneys' fees to Landowners. 

 Though we hold that the statutory and contractual notice provisions at issue do not represent
conditions precedent to cancellation of the compulsory insurance policy, we affirm the trial court's
judgment that the parties' retroactive release after notice of loss is void as contrary to public policy,
and maintain the trial court's determination that the insurance policy that was in effect at the time of
loss remains in full effect.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 16, 2003

Date Decided: May 29, 2003



1. Act of May 15, 1987, 70th Leg., R.S., ch. 223, § 1, 1987 Tex. Gen. Laws 1519, 1520-21,
repealed by Act of May 28, 1997, 75th Leg., R.S., ch. 1369, § 1, 1997 Tex. Gen. Laws 5124, 5140.
2. See G. A. Stowers Furniture Co. v. Am. Indem. Co., 15 S.W.2d 544 (Tex. Comm'n App.
1929, holding approved).
3. Landowners argue that, since the policy, as well as the statute, required that the notice be
given to the Department, then the policy provision also served as a condition precedent, and failure
to adhere to the provision rendered the cancellation of the policy unenforceable. This argument is
undermined by a long-standing rule, one which we will revisit in the following discussion, that
parties can mutually agree to cancel or change a policy in a way that is inconsistent with the terms
of the policy. Therefore, we will concentrate on the issue involving the statutory notice provision.
4. The Southern Transportation rule was codified in 4 Tex. Admin. Code 5.185 (1991). See
Truck Ins. Exch. v. E. H. Martin, Inc., 876 S.W.2d 200, 203 (Tex. App.-Waco 1994, writ denied).
5. The Legislature has amended the relevant portions of this provision. See Tex. Agric. Code
Ann. § 76.111 (Vernon Supp. 2003). The current version still requires parties to notify but has
eliminated the language specifying the effect of failure to provide the requisite notice. The issue of
whether the language in this former version of the provision represents a condition precedent will
not likely be an issue again before this Court or any other Texas court. The general issue, whether
proper notice to a governing agency is a condition precedent to cancellation of a compulsory
insurance policy, may, however, be an issue the courts see again. No Texas case has addressed the
issue specifically in terms of "condition precedent." A split among jurisdictions illustrates the
difficulty in using a condition precedent analysis. Current regulations relevant to compulsory
insurance under this section of the Texas Agriculture Code are now completely silent as to the
significance of failure to notify the department of change or cancellation. See 4 Tex. Admin. Code
§ 7.23 (2003).

6. See G. A. Stowers Furniture Co. v. Am. Indem. Co., 15 S.W.2d 544 (Tex. Comm'n App.
1929, holding approved).
7. The public policy expressed in the compulsory insurance legislation in Automobile
Insurance Co. v. Southern Transportation Co., 101 S.W.2d 585, 587-88 (Tex. Civ. App.-Dallas
1937, writ ref'd), is equally clear: "Each such motor carrier shall, on or before the date of the
expiration of the term of any policy . . . file such renewal policies and bonds so as to provide
continuous and unbroken protection to the public having legal claims against such motor carrier." 
(Emphasis added.) 



y;text-justify:inter-ideograph;
mso-pagination:widow-orphan'> 

                                                             No. 06-10-00215-CR

                                                ______________________________

 

 

                                 JAMES OWEN SPURLOCK,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 402nd
Judicial District Court

                                                             Wood County, Texas

                                                       Trial Court
No. 19,457-2006

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            James
Owen Spurlock has filed a pro se notice of appeal, claiming to appeal from the
trial courts denial of his post-conviction motion for DNA testing.  We have now received the supplemental clerks
record containing the order signed by the trial court on December 22,
2010.  That order only denies Spurlocks
request for appointment of counsel because the trial court did not find
reasonable grounds existed for the motion; it does not deny Spurlocks motion
for post-conviction DNA testing itself.

            The
Texas Court of Criminal Appeals has recently held in Gutierrez that an order denying appointed counsel under Article
64.01(c) of the Texas Code of Criminal Procedure is not an appealable order
under Texas Rule of Appellate Procedure 25.2(a)(2).  Gutierrez
v. State, 307 S.W.3d 318, 319, 323 (Tex. Crim. App. 2010); see Tex.
R. App. P. 25.2(a)(2); Tex. Code
Crim. Proc. Ann. art. 64.01(c) (Vernon Supp. 2010).

            We
dismiss this appeal for want of jurisdiction.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          January
5, 2011

Date Decided:             January
6, 2011

 

Do Not Publish