**Greg SACKS, Appellant,**

v.

**DALLAS GOLD & SILVER EXCHANGE, INC. and G. Michael Oyster, Appellees.**

No. 05–85–01231–CV.

Court of Appeals of Texas, Dallas.

Oct. 24, 1986.

Rehearing Denied Dec. 5, 1986.

J. Gregory Jackson, Waxahachie, for appellant.

John M. Phalen, Jr., Dallas, for appellees.

Before STEPHENS, DEVANY and McCRAW, JJ.

McCRAW, Justice.

Greg Sacks filed suit against Dallas Gold & Silver Exchange, Inc. (DGSE) and G. Michael Oyster, seeking enforcement of an agreement to pay accrued compensation allegedly due to him at the time his DGSE employment ended. The jury found that DGSE breached its agreement to pay Sacks and that DGSE forced Sacks to resign due to his refusal to carry out a fraudulent rent reduction scheme. The trial court, however, sustained DGSE's motion for judgment notwithstanding the verdict and ordered that Sacks take nothing. Sacks now appeals from this judgment in three points of error asserting that the trial court erred: (1) in entering judgment notwithstanding the verdict that appellant take nothing, as there was sufficient evidence to support the jury verdict awarding damages against DGSE for breach of contract and wrongful discharge; (2) in refusing to grant appellant's motion against Oyster for judgment notwithstanding the verdict for damages for wrongful termination; and (3) for not entering judgment on the verdict for damages for breach of contract and wrongful discharge based solely on appellant's refusal to commit a fraud, as he asserts the *in pari delicto* defense is not applicable. We disagree with Sacks' assertions and, accordingly, affirm the trial court's judgment.

Sacks was employed by DGSE as an "assistant controller-credit manager" in October 1982. There was no written employment contract. In April 1983, Sacks received a promotion to "controller"; his oral employment agreement with DGSE allowed over-time compensation. Sacks, as controller, was to prepare quarterly statements for DGSE'S landlord, to determine proper rental payments. The rent was based upon a percentage of DGSE sales.

Upon assuming his role as controller, Sacks found that the previously submitted statements were falsified to show lesser rental amounts owing. Sacks wrote a memo to several DGSE officers about the enormous amount of the rent obligation. The memo presented four options for resolving the problem: (1) pay the additional $114,396 as required by the lease; (2) renegotiate the lease immediately; (3) terminate the lease; or (4) keep two sets of books. In response, Sacks was told to take care of the matter and to submit the report to show DGSE only owing $3,000.00.

Sacks states he expressed his concern over submission of the fraudulent reports and the eventual inspection of the books by the landlord's auditors. In July 1983, Sacks received $11,000 as partial payment for his 100 hours accrued overtime, leaving $29,918 unpaid. Later, on February 9, 1984, the matter of the impending audit resurfaced. Sacks was embarrassed and did not want to be involved in this audit since he had been preparing incorrect monthly statements. Sacks attempted to resign, but changed his mind when he was told that his overtime would not be paid unless he stayed. As an incentive to stay with DGSE, Sacks was offered a $25,000 bonus for helping them through the audit. Sacks received this bonus. On February 28, 1984, Sacks' last day of employment, an agreement was drafted by DGSE agreeing to pay Sacks for overtime, wages, and accrued vacation. This is the agreement upon which Sacks bases his cause of action.

In his first point of error, Sacks claims that the trial court erred in entering a judgment notwithstanding the verdict as there was sufficient evidence to support the jury verdict: (1) awarding exemplary damages for wrongful discharge, and (2) awarding damages for breach of the February 28, 1984, agreement. We disagree. In reviewing the entry of a judgment notwithstanding the verdict, we must consider the evidence in the light most favorable to the party against whom the judgment was ren-

dered, and every reasonable inference must be indulged in that party's favor. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex.1982). It must be determined that there is no evidence of probative force upon which the jury could have made the findings relied upon. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex.1983); *Atrium Boutique v. Dallas Market Center Co.*, 696 S.W.2d 197, 198–99 (Tex.App.— Dallas 1985, writ ref'd n.r.e.).

Sacks claims that there is adequate evidence to support the jury's finding that he was wrongfully discharged. We disagree. The statement of facts before us shows that Sacks was the only witness to testify. We do not find any evidence supporting the proposition that Sacks was wrongfully discharged. The words "resigned" and "quit" are the words Sacks himself uses to describe his attempted termination and actual termination as is shown below:

Q Mr. Sacks, when were you told that you were not going to get your overtime paid?

A Well, I guess the first you can say, I was told I wasn't going to get it except I got some in February and August is when I tried to *resign* in February of '84.

Q Do you remember the exact date?

A Yes, I *resigned*—gave my boss Terry Handley my *resignation* in February.

Q But you didn't leave the company until February 28th. What happened between then and the 28th?

A No, on [sic] February he asked me to wait until the weekend because he was going on vacation and he asked if we could hold off my conversation about *resignation* until then. On February 11th, Saturday, he sat down with me and asked me why I was *resigning* and informed me that we had a audit coming up with the landlord, Folsom and I said that was one of the reasons that I was concerned about *resigning* and he says, well, Greg, you have a lot of overtime still accumulated to you and he says, I do not believe that Mike Eister will pay that to you until the completion of the Folsom audit. And I said I really don't under-

stand. I said my employment or my overtime is based on the hours up until that point in time and he said, well, he asked me what my concern was regarding the audit.

\* \* \* \* \* \*

Q What happened on February 28, 1984?

A *I just wanted out.*

Q What did you do, Mr. Sacks?

A I told them I was *quitting.* I was going to lunch and I would like to settle up with the moneys that they felt were due me.

Q Who did you talk to precisely?

A I talked to Mr. Handley and Mr. Palms and Mr. Oyster.

Q How did you feel on that date, Mr. Sacks?

A Probably like I feel today.

Q Tell the jury how you felt?

A I just feel I sold the only thing that was very important to me, my honesty. I sold out and *even though by leaving* I still didn't whitewash it.

(Emphasis added).

The statement of facts in no way indicates that Sacks was fired or ousted as a controller for DGSE. To the contrary, all the evidence indicates Sacks' superiors wanted him to stay. We hold there is no evidence of probative force to support the jury finding that Sacks was wrongfully discharged and, therefore, sustain the trial court's judgment notwithstanding the verdict on this finding. *See Atrium Boutique*, 696 S.W.2d at 199.

■ Sacks also complains that there is sufficient evidence to support the jury verdict for damages due to the breach of the February 28, 1984, agreement to pay him for his accrued wages and benefits. These amounts were from Sacks' work, which admittedly consisted of aiding and assisting DGSE in the perpetration of a fraud. Sacks acknowledges his complicity in the illegal activities in his first amended petition for relief:

After aiding and assisting Defendants and virtually all other employees of Dal-

las Gold and Silver Exchange in the "Folsom Project" (*the sceme [sic] to defraud [the Landlord]*) during the period of 14 February through 28 February, 1984, Plaintiff on 28 February met the individual Defendants and Terry Hanlon, the general manager of Dallas Gold and Silver Exchange, and announced his refusal to *continue in the illegal activities*. At that time Defendants delivered [the agreement sued upon.]

(Emphasis added).

Clearly, Sacks was aware and joined in DGSE's fraudulent activities shortly after he assumed the position of controller in April 1983. Thereafter, he continued in that activity until he resigned in February 1984. The evidence indicates that these activities covered approximately a ten-month period and not, as Sacks contends, merely a period of time in February 1984 during which the audit took place.

■ The courts will not enforce a contract whose provisions are against public policy. *Baron v. Mullinax, Wells, Mauzy & Baab, Inc.*, 623 S.W.2d 457, 461 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.). In examining an agreement to determine if it is contrary to public policy the court must look for a tendency to be injurious to the public good. *Hazelwood v. Mandrell Industries Co.*, 596 S.W.2d 204, 206 (Tex. Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). The DGSE–Sacks agreement to pay accrued compensation on its face is not contrary to public policy. But, when the agreement's underlying facts were examined by the trial court, it was clear that the fraudulent rent reduction scheme was injurious to the public good and contrary to public policy. We hold that the trial court correctly refused to enforce Sacks' agreement.

■ Sacks has argued that the monies due him were not earned as the result of illegal activity and, therefore, he should be compensated. Upon review of the record, we find that the time Sacks worked in legal

activity is so commingled with his illegal activity that no differentiation can be made. In this situation, where illegal provisions in a contract are not severable from the legal provisions, the entire agreement will be invalid. *Redgrave v. Wilkinson*, 208 S.W.2d 150, 152 (Tex.Civ.App.—Waco 1948, writ ref'd n.r.e.). Therefore, the trial court correctly disregarded the jury's finding that there was a breach of contract between the parties. Sacks' point of error one is overruled.

In his second point of error, Sacks asserts that the trial court erred by not granting his motion for judgment notwithstanding the verdict against appellee Oyster on the basis that Sacks' action for actual and exemplary damages for wrongful termination was established against Oyster as a matter of law. We cannot agree.

■ As previously discussed, there is no evidence in the record before this court to indicate that appellant was ever wrongfully terminated from DGSE. Sacks unequivocally stated that he attempted to "resign" and that he "quit" in order to "get out". Sacks' failure to testify as to a wrongful termination substantiates the finding of the trial court. When findings are sufficient to support judgment of trial court under any applicable legal principle and there is no reversible error otherwise presented, the judgment must be affirmed. *Hidalgo County v. Pate*, 443 S.W.2d 80, 83 (Tex.Civ. App.—Corpus Christi 1969, writ ref'd n.r. e.). Sacks' second point of error is overruled.

■ In his third point of error, appellant contends that the trial court erred in failing to enter a judgment on the jury verdict based solely on Sacks' refusal to commit a fraud, since the *in pari delicto* defense [1] is not available as a matter of law. We disagree with this final point of error.

A party may assert the defense of illegality to prevent the enforcement of an

---

1. *In pari delicto* is defined as meaning "in equal fault." BLACK'S LAW DICTIONARY 711 (rev.  5th ed. 1979).

illegal contract against him even though he was himself equally guilty with the other party. *Emco, Inc. v. Healy,* 602 S.W.2d 309, 313 (Tex.Civ.App.—Texarkana 1980, no writ). When parties are in equal fault the courts generally will not aid in the enforcement of the illegal contract, nor provide relief to a party who has executed the contract, but will leave the parties as they find them. *Morrison v. City of Fort Worth,* 138 Tex. 10, 14, 155 S.W.2d 908, 909 (1941); *Associated Indemnity Co. v. Hartford Accident & Indemnity Co.,* 524 S.W.2d 373, 377 (Tex.Civ.App.—Dallas 1975, no writ). Accordingly, this Court will not intervene to enforce the illegal agreement between the parties, but will leave the parties as they are. Sacks' third point of error is overruled. The judgment of the trial court is affirmed.