TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00129-CV







Texas A & M University-Kingsville, Appellant



v.



Grant M. Lawson, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. 99-01282, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





O P I N I O N



 Texas A & M University-Kingsville ("TAMUK") appeals from a judgment imposing
liability on TAMUK for breaching a settlement agreement between it and Grant M. Lawson. 
TAMUK argues that the district court's judgment should be reversed because the settlement
agreement was never approved by the requisite state officials and because the settlement agreement
required TAMUK employees to provide false information to members of the public. TAMUK also
argues that the district court's award of attorney fees was improper. We will affirm the judgment
of the district court.


BACKGROUND

History of the Underlying Settlement Agreement

 Lawson began working for Texas A & I University (now TAMUK) in 1989 as a
clarinet instructor in the music department. Lawson was fired after a dispute in September 1992. 
Following his dismissal, Lawson sued TAMUK and several individuals for wrongful termination. (1) 
TAMUK and Lawson reached a settlement on October 14, 1994, under which TAMUK would pay
Lawson $60,000 to dismiss his suit. The agreement stated that it was "subject to the approval of the
governor and comptroller of the State of Texas" and that TAMUK would "use [its] best efforts to
cause the payment to be made on or before December 14, 1994." (2) Because the state failed to make
the payment in time, Lawson rescinded the agreement.

 On February 24, 1995, TAMUK obtained approval for the settlement and the $60,000
payment. Because Lawson had rescinded the first mediation agreement, the parties entered into a
second mediation and arrived at a Release and Settlement Agreement, dated May 16, 1995, which
is the subject of this lawsuit (the "Final Agreement"). The Final Agreement provided that Lawson
would dismiss his lawsuit against TAMUK with prejudice if TAMUK would perform three actions. 
First, TAMUK would pay $60,000 to Lawson immediately upon execution of the Final Agreement
and an additional $2000 to Lawson no later than May 18, 1995. (3) Second, TAMUK would provide
letters of recommendation to Lawson that would "factually state the accomplishments and positive
aspects of Lawson's performance." Finally, the Final Agreement stated that TAMUK would respond
to employment inquiries as follows:


Any official inquiry made to the university regarding Lawson's employment shall be
referred to the director of personnel. The director of personnel shall respond by
confirming that Lawson was employed as an assistant professor at a salary of $31,000
a year, inclusive of benefits. The director of personnel shall state that he may not
provide any other information.



 Although Lawson was employed as an instructor, the Final Agreement provided that
TAMUK would refer to him as an "assistant professor." Lawson claims that, but for his termination
from TAMUK, he would have received his doctorate of music sooner, thereby making him eligible
for a position at TAMUK as an assistant professor. (4) Therefore, Lawson claims that the Final
Agreement "was designed to make Dr. Lawson 'whole' and, as part of that design, it effectively
promoted Dr. Lawson to Assistant Professor."


Breach of the Final Agreement

 In 1998, Lawson applied for a position as clarinet instructor at Fort Hays State
University ("FHSU") in Kansas. Lawson represented to FHSU that he had served at TAMUK as an
assistant professor. When Lawson made the list of "semifinalists" for the position, Dr. James
Murphy, the chair of the department of music at FHSU, called the TAMUK department of music to
discuss Lawson's employment history. After leaving several messages with the department chair's
secretary, Dr. Murphy eventually spoke to the department chair. According to Dr. Murphy, the
department chair said he "would literally lose his job" if he were to discuss Lawson's employment
with Dr. Murphy. Dr. Murphy then spoke to the personnel director, who informed Dr. Murphy of
Lawson's salary and his prior position as "instructor." Not knowing if the term "instructor" was used
generically or to refer specifically to Lawson's rank, Dr. Murphy asked for clarification from the
personnel director, who again stated Lawson's salary and that he was an "instructor."

 Lawson did not receive the position at FHSU. He contacted Dr. Murphy, who related
the details of his conversation with TAMUK to Lawson. Lawson contacted TAMUK, and counsel
for TAMUK responded to Lawson's inquiries and stated that TAMUK should have represented
Lawson's rank as "assistant professor" instead of "instructor." Lawson subsequently filed suit
against TAMUK and several individuals for breach of the Final Agreement and for declaratory relief
to prevent future violations. During the pendency of Lawson's lawsuit for breach of the Final
Agreement, TAMUK changed the script its personnel department would use when communicating
with Lawson's potential employers and required its personnel department to respond: "We are
currently in litigation with Mr. Lawson. Under advice from counsel, the request for verification must
be in writing."


Procedural History

 After Lawson brought suit for breach of the Final Agreement, TAMUK filed a plea
to the jurisdiction, asserting sovereign immunity. The district court denied TAMUK's plea, and
TAMUK brought an interlocutory appeal. Both this Court and the supreme court affirmed the
district court's denial of TAMUK's plea to the jurisdiction. Texas A&M Univ.-Kingsville v. Lawson,
28 S.W.3d 211, 216 (Tex. App.--Austin 2000), aff'd, 87 S.W.3d 518 (Tex. 2002).

 Lawson's case then proceeded to trial in November 2002, over four years after the
alleged breach of the Final Agreement. After a jury determined that TAMUK had breached the Final
Agreement, the district court entered judgment on the verdict and awarded Lawson actual damages
and attorney's fees as found by the jury. The trial court, however, refused to grant the part of
Lawson's declaratory relief that requested that the district court declare that the terms of the Final
Agreement prohibited TAMUK from telling prospective employers that TAMUK was involved in
litigation with Lawson.

 TAMUK now appeals the district court's judgment, arguing that (1) it cannot be
bound by an agreement that was not approved by the requisite state officials, and it should have been
allowed to present evidence on this issue in the trial court; (2) it cannot be held liable for violating
the contract clause that requires TAMUK to state Lawson's position as "assistant professor" because
this clause is void as against public policy and as violative of statutes regarding public information
and open government; and (3) Lawson is not entitled to an award of attorney's fees.

 In one cross-point, Lawson argues that the district court erred in denying his request
to declare that the terms of the Final Agreement prohibit TAMUK from telling prospective
employers that TAMUK is involved in litigation with Lawson.


DISCUSSION

Approval of the Final Agreement

 TAMUK argues that its failure to obtain the approval of the governor, comptroller,
and attorney general of Texas to the terms of the Final Agreement renders the agreement
unenforceable. (5) TAMUK also argues the district court erred in ruling as a matter of law that all
conditions precedent had been satisfied upon payment of the $60,000 warrant.

 As support for its argument, TAMUK cites two appropriations statutes, the first of
which provides:


Payment of all judgments and settlements prosecuted by or defended by the Attorney
General is subject to approval of the Attorney General as to form, content, and
amount, and certification by the Attorney General that payment of such judgment or
settlement is a legally enforceable obligation of the State of Texas.



Act of May 27, 1993, 73d Leg., R.S., ch. 1051, art. V, § 65(2), 1993 Tex. Gen. Laws 4518, 5364. 
The second statute provides:


Payments for settlements and judgments for claims against state agencies that are
payable under Chapters 101 and 104, Texas Civil Practices and Remedies Code
Annotated, as determined by the Attorney General . . . are to be paid out by the
Comptroller on vouchers drawn by the Attorney General and approved by the
Governor.



Id., art. I-69, A.1.1(2), 1993 Tex. Gen. Laws 4518, 4599. TAMUK also cites the first mediation
agreement, which stated that "this mediation agreement is subject to the approval of the governor
and comptroller of the State of Texas," and argues that this language was "inexplicably" changed
in the Final Agreement to read "the payment of $60,000.00 to Plaintiff is subject to approval by the
Office of the Governor and State Comptroller to the terms of this agreement." (6) (Emphasis added.)

 We reject TAMUK's arguments. First, nothing in the appropriations statutes
TAMUK cites required the governor, comptroller, or attorney general to approve the terms of the
Final Agreement. Both appropriations statutes merely required approval of payment, and it is
undisputed that the $60,000 warrant was approved by the requisite state officials. Finding nothing
in the appropriations statutes that requires the governor, comptroller, or attorney general to approve
the terms of the Final Agreement, we reject TAMUK's contentions that the Final Agreement is
unenforceable due to a failure to comply with the appropriations statutes.

 TAMUK's argument that the first mediation agreement contained a condition
precedent that the agreement be approved by the governor and comptroller is also unconvincing. 
The Final Agreement contained a merger clause that stated: "This compromise settlement agreement
contains the entire agreement between the parties and supersedes any and all prior agreements of
understandings, statements, promises or inducements contrary to the terms of this compromise
settlement agreement. This compromise settlement agreement cannot be changed or terminated
orally." In contract cases, the "merger doctrine," an analogue of the parol-evidence rule, refers to
the absorption of one contract into another subsequent contract and is largely a matter of intention
of the parties. Fish v. Tandy Corp., 948 S.W.2d 886, 898 (Tex. App.--Fort Worth 1997, pet.
denied); see Eslon Thermoplastics v. Dynamic Sys., Inc., 49 S.W.3d 891, 898 (Tex. App.--Austin
2001, no pet.). Merger occurs when the same parties to an earlier agreement later enter into a written
integrated agreement covering the same subject matter. Fish, 948 S.W.2d at 898. Absent pleading
and proof of ambiguity, fraud, or accident, a written instrument presumes that all the parties' earlier
agreements relating to the transaction have merged into the written instrument. Id.

 We hold that the merger clause in the Final Agreement is valid and that the Final
Agreement represents the entire agreement between the parties. TAMUK's argument that the
language of the first mediation agreement was "inexplicably" changed in the Final Agreement is not
persuasive. The assistant attorney general representing TAMUK, who recommended settlement to
the Office of the Attorney General and represented TAMUK during the mediation of Lawson's
lawsuit, signed the Final Agreement on behalf of TAMUK. Our review of the record reveals nothing
to indicate that TAMUK's counsel, who was intimately familiar with Lawson's initial lawsuit and
the two mediation agreements, was unaware of the content of the Final Agreement that he signed. 
It is clear that the Final Agreement superseded the first mediation agreement and extinguished the
requirement that the entire agreement be approved by the governor and comptroller. The Final
Agreement provided that "the payment of $60,000.00 to Plaintiff is subject to approval," and this
condition was satisfied.

 Finally, TAMUK argues that the district court erred in ruling as a matter of law,
during a hearing on the parties' motions in limine, that all conditions precedent had been satisfied
and that payment of the $60,000 warrant was sufficient evidence of approval by the governor and
comptroller. TAMUK has failed to show what evidence, if any, was not before the district court
when it ruled on Lawson's motions in limine. Moreover, the only two cases TAMUK cites on
appeal in support of its position are easily distinguishable. (7) Finding nothing in the record or in Texas
case law to support TAMUK's position, we overrule its first issue.

Validity of "Assistant Professor" Clause

 TAMUK next argues that it should not be required to comply with the Final
Agreement, into which it voluntarily entered, because the Final Agreement required TAMUK to
represent Lawson's position as "assistant professor" when his actual position was only that of an
"instructor." TAMUK argues that because complying with the Final Agreement would require
TAMUK to lie about Lawson's employment, the Final Agreement is therefore void as illegal (8) and
as against public policy.

 We disagree. A court can declare a contract void as illegal or as against public policy
and refuse to enforce it. Williams v. Patton, 821 S.W.2d 141, 147-48 (Tex. 1991) (Doggett, J.,
concurring) (public policy); Lewis v. Davis, 199 S.W.2d 146, 148-49 (Tex. 1947) (illegality); South
Tex. Coll. of Law v. Texas Higher Educ. Coordinating Bd., 40 S.W.3d 130, 135 (Tex. App.--Austin
2000, pet. denied) (public policy). However, a contract "that could have been performed in a legal
manner will not be declared void because it may have been performed in an illegal manner,"
Franklin v. Jackson, 847 S.W.2d 306, 310 (Tex. App.--El Paso 1992, writ denied), and in
examining an agreement to determine if it is contrary to public policy, the court must look for a
tendency to be injurious to the public good. Sacks v. Dallas Gold & Silver Exch., Inc., 720 S.W.2d
177, 180 (Tex. App.--Dallas 1986, no writ).

 Here, TAMUK has failed to show how referring to Lawson as an "assistant professor"
is in any way "injurious to the public good," especially in light of Lawson's argument that the Final
Agreement "was designed to make Dr. Lawson 'whole' and, as part of that design, it effectively
promoted Dr. Lawson to Assistant Professor." (9) Furthermore, TAMUK could have complied with
the terms of the contract and avoided any public policy or illegality concerns simply by retroactively
promoting Lawson. Because the Final Agreement could have been performed in a legal manner by
retroactively promoting Lawson, and because TAMUK has failed to show that referring to Lawson
as an "assistant professor" is injurious to the public good, we overrule TAMUK's second issue. See
Franklin, 847 S.W.2d at 310 (illegality); Sacks, 720 S.W.2d at 180 (public policy).


Attorney's Fees

 In its third issue, TAMUK argues that there is no statutory basis to support the district
court's award of attorney's fees. The district court's final judgment, after detailing Lawson's
attorney's fees and prejudgment interest, states:


Plaintiff requested attorneys' fees based on Texas Civil Practice & Remedies Code,
Chapters 37 and Chapter 38. Plaintiff offered evidence at trial for preparation and
trial proving reasonable and necessary attorneys' fees. The Court orders Defendant
to Pay Plaintiff the attorneys' fees as specified above.



 First, regarding Lawson's breach-of-contract claim, TAMUK argues that because it
is not a "corporation" or "individual," the Texas Civil Practice and Remedies Code does not support
the district court's award of attorney's fees. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West
1997). We agree and hold that section 38.001 of the Texas Civil Practice and Remedies Code does
not support the district court's award of attorney's fees. See Base-Seal, Inc. v. Jefferson County, 901
S.W.2d 783, 786-87 (Tex. App.--Beaumont 1995, writ denied); State v. Bodisch, 775 S.W.2d 73,
76 (Tex. App.--Austin 1989, writ denied).

 Next, TAMUK addresses Lawson's request for declaratory relief under chapter 37
of the Texas Civil Practices and Remedies Code and points to a paragraph in Lawson's proposed
final judgment that was redacted by the district court:


Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, the Court
declares that the terms of the agreement on which Plaintiff has sued prohibits
Defendant from telling prospective employers that Defendant is involved in litigation
with Plaintiff.



TAMUK claims that "because [Lawson's] claim for declaratory relief was denied," the declaratory
judgments act does not support the award of attorney's fees. See Tex. Civ. Prac. & Rem. Code Ann.
§ 37.009 (West 1997) ("In any proceeding under this chapter, the court may award costs and
reasonable and necessary attorney's fees as are equitable and just.").

 As part of declaratory relief, a trial court has discretion in awarding attorney's fees
"as are equitable and just." FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 888 (Tex.
2000). The award of attorney's fees is not dependent on a finding that the party "substantially
prevailed," Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d 618,
638 (Tex. 1996); West Beach Marina, Ltd. v. Erdeljac, 94 S.W.3d 248, 270 (Tex. App.--Austin
2002, no pet.), and a trial court may award just and equitable attorney's fees to a non-prevailing
party. State Farm Lloyds v. Borum, 53 S.W.3d 877, 894 (Tex. App.--Dallas 2001, pet. denied);
Brush v. Reata Oil & Gas Corp., 984 S.W.2d 720, 729 (Tex. App.--Waco 1998, pet. denied). In
reviewing the trial court's award of fees to Lawson, we must determine whether TAMUK has shown
that the trial court abused its discretion by awarding attorney's fees. Borum, 53 S.W.3d at 894
(citing Bocquet v. Herring, 972 S.W.2d 20, 21 (Tex. 1998)).

 We disagree that redaction of Lawson's request for prospective relief prevents an
award of attorney's fees under section 37.009 of the declaratory judgments act. Lawson's request
for declaratory relief included continued enforcement of the Final Agreement, which TAMUK had
breached. Although a breach-of-contract cause of action can provide actual damages, only a
declaratory-judgment cause of action can prospectively enforce the breached agreement. Here, the
district court's judgment provides this relief, but denies Lawson's request to clarify the Final
Agreement to prevent TAMUK from informing prospective employers that TAMUK and Lawson
were in litigation. The fact that the district court refused this discrete portion of Lawson's request
for declaratory relief does not deprive the district court of its discretion to award attorney's fees
under the other prospective declaratory relief requested. We therefore overrule TAMUK's final
issue. (10)


CONCLUSION

 Because we overrule all of TAMUK's issues, we affirm the judgment of the district
court.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: January 29, 2004

1. Lawson sued TAMUK for, among other claims, a violation of the Whistleblower Act. See
Act of May 30, 1983, 68th Leg., R.S., ch. 832, §§ 1-6, 1983 Tex. Gen. Laws 4751, 4751-53,
repealed and recodified by Act of April 30, 1993, 73d Leg., R.S., ch. 268, §§ 1, 46, 1993 Tex. Gen.
Laws 583, 609-611, amended by Act of May 25, 1995, 74th Leg., R.S., ch. 721, §§ 1-10, 1995 Tex.
Gen. Laws 3812, 3812-14 (current version at Tex. Gov't Code Ann. §§ 554.001-.010 (West 1994
& Supp. 2004)). The trial court sustained TAMUK's plea to the jurisdiction with respect to some
of Lawson's claims, but denied the plea with respect to Lawson's Whistleblower Act claim and his
constitutional claims for equitable relief.
2. TAMUK argues that two statutes required that this settlement be approved by the attorney
general, comptroller, and governor. See Act of May 27, 1993, 73d Leg., R.S., ch. 1051, art. V,
§ 65(2), 1993 Tex. Gen. Laws 4518, 5364; Act of May 27, 1993, 73d Leg., R.S., ch. 1051, art. I-69,
A.1.1(2), 1993 Tex. Gen. Laws 4518, 4599. We will discuss these statutes below.
3. The assistant attorney general who represented TAMUK during the mediation of Lawson's
lawsuit tendered a warrant in the amount of $60,000 to Lawson's attorney at the May 16, 1995
mediation. The $60,000 payment made at the May 16, 1995 mediation was actually a product of the
first mediation agreement. The warrant was dated March 7, 1995, signed by Comptroller John
Sharp, and made payable to both Lawson and his attorney. The $2000 was paid to Lawson out of
TAMUK funds. Following payment, Lawson dismissed his lawsuit against TAMUK with prejudice. 
4. Lawson in fact received his doctorate of music from Michigan State University in May
1997.
5. Although the parties had been litigating the alleged breach of the Final Agreement for
approximately four years, TAMUK first alleged the Final Agreement was unenforceable in a
supplemental motion for summary judgment filed approximately one week before trial.
6. Although the Final Agreement provided that Lawson was to be paid $62,000, the governor
and comptroller were only required to approve the $60,000 payment.
7. TAMUK cites Fort Worth Cavalry Club, Inc. v. Sheppard, 83 S.W.2d 660, 663 (Tex.
1935), for the proposition that "the powers and duties of public officers are defined and limited by
the law" and that "public officers may make only such contracts for the government they represent
as they are authorized by law to make." TAMUK also cites State v. Steck Co., 236 S.W.2d 866, 869
(Tex. Civ. App.--Austin 1951, writ ref'd), for the proposition that "the officers of the State [can]
exercise only those powers conferred on them by the law of the State" and that when this tenet is
violated, "a legal obligation against the State [is] not created by the unauthorized contract." 
However, TAMUK has failed to show any statutory or constitutional violation. The appropriations
statutes required approval of payment, and the $60,000 payment was approved in compliance with
these statutes. Moreover, these cases do not support TAMUK's contention that the district court
erred in either the manner or substance of its ruling.
8. TAMUK argues that stating Lawson's position as "assistant professor" would violate
sections 552.001(a) and 552.022(a)(2) of the Texas Government Code. See Tex. Gov't Code Ann.
§ 552.001(a) (West 1994) ("[I]t is the policy of this state that each person is entitled, unless
otherwise expressly provided by law, at all times to complete information about the affairs of
government and the official acts of public officials and employees."); id. § 552.022(a)(2) (West
Supp. 2004) (stating that "the name, sex, ethnicity, salary, title, and dates of employment of each
employee and officer of a governmental body" are public information unless expressly confidential
under other law).
9. Lawson's employment contract with TAMUK indicated that he would receive a promotion
to assistant professor if he received his doctorate of music prior to the next contract year. According
to Lawson, the completion of his doctorate was delayed as a result of his termination.
10. Because we overrule TAMUK's final issue, we need not reach Lawson's cross-point.