Reversed and Rendered and Opinion
filed May 3, 2011.

In
The

Fourteenth
Court of Appeals



NO. 14-09-00641-CV



General Agents
Insurance Company of America, Inc.,
Appellant 

v.

Ahmed El Naggar
and El Naggar Fine Arts Furniture, Inc., Appellees 



On Appeal from
the 165th District Court

Harris County, Texas

Trial Court
Cause No. 2005-07980-B



 

OPINION

Appellant General Agents Insurance Company of
America, Inc. (“Gainsco”) challenges the trial court’s rendition of partial
summary judgment in favor of appellees Ahmed El Naggar and El Naggar Fine Arts
Furniture, Inc. (collectively “El Naggar”) in El Naggar’s suit against Gainsco
to recover insurance proceeds.  Gainsco contends that the trial court erred in
granting El Naggar’s partial summary-judgment motion and implicitly denying
Gainsco’s cross-motion on the ground that a buy-back agreement between Gainsco
and Traxel Construction, Inc. is void as against public policy.  We reverse and
render.

I.                  
Factual and
Procedural Background

El Naggar contracted with Frederick Bell, owner of
Traxel Construction, Inc., for the construction of a steel building and a
concrete slab.  Appellant Gainsco issued a commercial general liability (CGL)
policy to Traxel.  Problems arose over the construction project and, in 2001,
El Naggar filed suit against Bell, Traxel, and other parties.[1]    

The first trial ended in a mistrial.  Just after the
mistrial, Gainsco and Traxel entered into a “buy-back agreement.”[2]  Under the
terms of the agreement, Gainsco repurchased Traxel’s CGL policy for $50,000,
and Traxel released Gainsco from any and all claims or demands arising out of
the policy.  The lawsuit proceeded to a second trial, which resulted in a judgment
in El Naggar’s favor against Traxel only.[3]

El Naggar then sued Gainsco along with other of
Traxel’s insurers to collect the judgment.[4] 
El Naggar alleged several claims against Gainsco, including one in which it
sought a declaratory judgment that the buy-back agreement between Gainsco and
Traxel violated either the Texas Insurance Code, Texas public policy, or the
Texas Uniform Fraudulent Transfer Act, and is unconscionable.  The parties
filed cross-motions for summary judgment on the validity of the policy buy-back
agreement, arguing over whether the agreement is void as against public policy.[5]  On
September 11, 2006, the trial court granted El Naggar’s motion for summary
judgment, declared the buy-back agreement void, and ordered that the CGL policy
was not affected by the buy-back agreement.  On June 13, 2007, Gainsco filed a
motion to sever the interlocutory summary-judgment ruling and abate El Naggar’s
remaining claims pending appeal of that ruling.  On July 10, 2007, the trial
court denied the motion.  

Gainsco subsequently filed a petition for writ of
mandamus requesting this court to order the Honorable Elizabeth Ray to (1)
vacate her July 10, 2007 order, (2) sever the interlocutory summary judgment to
render it final and appealable, and (3) abate the proceedings on El Naggar’s
remaining claims.  On May 15, 2008, we issued a substitute opinion that
conditionally granted the petition for writ of mandamus and directed the trial
court to vacate its July 10, 2007 order denying Gainsco’s motion to sever and
abate, and grant the same.

On May 21, 2008, El Naggar filed a nonsuit, without
prejudice, on its claims for declaratory relief, specifically noting that the
nonsuit included the declaratory-judgment relief relating to the buy-back
agreement.  On May 23, 2008, Judge Ray signed an order taking notice of the
nonsuit.  On June 27, 2008, the trial court granted the severance and abatement
in accordance with this court’s opinion.  The June 27, 2008 order, however,
severed the interlocutory summary judgment into an “A” case that already
existed.  Gainsco filed its first notice of appeal on July 14, 2008.[6]  

El Naggar filed yet another nonsuit after the
severance, specifically seeking to nonsuit without prejudice the partial
summary-judgment ruling on the buy-back agreement.  On July 14, 2008, the
Honorable John T. Wooldridge, sitting for Judge Ray, signed an order taking
notice of the nonsuit and dismissing the severed action from the trial court’s
docket.  On August 6, 2008, Judge Wooldridge signed an amended order of
severance that (1) vacates Judge Ray’s June 27, 2008 order granting severance
and abatement and (2) severs the declaratory-judgment claim relating to the
buy-back agreement into “B.”  In that order, Judge Wooldridge states that El
Naggar’s nonsuit “moots” the partial summary-judgment ruling in El Naggar’s
favor; however, Judge Wooldridge did not vacate the partial summary-judgment
order.  In a separate order, Judge Wooldridge lifted the abatement and set El
Naggar’s remaining claims for trial on December 8, 2008.[7]  Gainsco
filed its second notice of appeal on August 15, 2008.

On July 31, 2008, Gainsco filed a motion to enforce
the writ conditionally granted in our May 15, 2008 substitute opinion.  This
court granted the motion on September 9, 2008, and ordered the sitting judge of
the 165th District Court to abate the proceedings with regard to El Naggar’s
remaining claims pending this appeal.  El Naggar filed a motion for rehearing
and rehearing en banc, contending that the nonsuit made moot this court’s
granting of the petition for writ of mandamus to sever the declaratory-judgment
claim and abate El Naggar’s remaining claims.  The motions were overruled.  El
Naggar filed a petition for writ of mandamus with the Texas Supreme Court,
which was denied on March 27, 2009.  

II.              
Analysis

A.    The
Effect of Nonsuit on the Partial Summary-Judgment Ruling

As
a preliminary matter, El Naggar challenges this court’s jurisdiction,
contending that there is no longer a justiciable controversy because El Naggar
filed a nonsuit without prejudice on whether the buy-back agreement is void as
against public policy, rendering the partial summary-judgment ruling on that
issue moot.[8] 


The
mootness doctrine prevents courts from rendering advisory opinions, and under article
II, section 1 of the Texas Constitution, courts have no jurisdiction to issue
advisory opinions.  See Valley Baptist Med. Ctr. v. Gonzalez, 33 S.W.3d
821, 822 (Tex. 2000) (per curiam).  “[A] controversy must exist between the
parties at every stage of the legal proceedings, including the appeal.”  Bd.
of Adjustment of City of San Antonio v. Wende, 92 S.W.3d 424, 427 (Tex.
2002) (quoting Williams v. Lara, 52 S.W.3d 171, 184 (Tex. 2001)).  An
issue may become moot when a party seeks a ruling on some matter which, when
rendered, would not have any practical legal effect on a then-existing
controversy.  See In re H&R Block Fin. Advisors, Inc., 262 S.W.3d
896, 900 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).  

Here,
El Naggar filed a nonsuit, without prejudice, on its claims for declaratory-
judgment relief after receiving a favorable ruling on whether the buy-back
agreement between Gainsco and Traxel is void as against public policy.  At the
time, El Naggar’s eleventh amended petition included a request for declaratory
judgment (1) to declare that the buy-back agreement between Gainsco and Traxel
violates either the Texas Insurance Code, Texas public policy, or the Texas
Uniform Fraudulent Transfer Act, and is unconscionable; (2) to determine the
rights, status or other legal relations between El Naggar and other parties to
the case; and (3) to determine various insurance responsibilities.  The trial
court took notice of the nonsuit.  El Naggar then filed its twelfth amended
petition omitting the declaratory-judgment claims.  The trial court severed the
issue of the validity of the buy-back agreement adjudicated in the partial
summary-judgment ruling.  After severance, El Naggar filed another nonsuit
without prejudice, seeking specifically to nonsuit the partial summary-judgment
ruling.  The trial court took notice of El Naggar’s nonsuit and dismissed the
action from the docket.  The trial court later vacated the first severance order
and severed “the non-suited and moot claims and orders” into action “B.”

A
nonsuit does not vitiate a decision on the merits, including a partial summary
judgment, unless the decision on the merits is set aside by the trial court.  Hyundai
Motor Co. v. Alvarado, 892 S.W.2d 853, 854-55 (Tex. 1995) (per curiam). 
“Once a judge announces a decision that adjudicates a claim, that claim is no
longer subject to the plaintiff’s right to nonsuit.”  Id. at 855.  This
reasoning is rooted in the doctrines of res judicata and collateral estoppel,
which “promote judicial efficiency, protect parties from multiple lawsuits, and
prevent inconsistent judgments by precluding the relitigation” of matters that
have already been decided.  In re Team Rocket, L.P., 256 S.W.3d 257, 260
(Tex. 2008) (orig. proceeding) (quoting Sysco Food Servs., Inc. v. Trapnell,
890 S.W.2d 796, 801 (Tex. 1994)).  

El
Naggar contends that these rules do not apply here because El Naggar received a
favorable ruling on whether the buy-back agreement violates public
policy.  Favorable or not, that issue had already been adjudicated.  See
Johnson v. Evans, No. 14-08-00610-CV, 2010 WL 431293, at *4 (Tex.
App.—Houston [14th Dist.] Feb. 9, 2010, pet. denied) (mem. op.) (citing Alvarado
and holding that nonsuit could not, and did not, alter earlier favorable ruling
in partition action).  The nonsuit on the issue of whether the buy-back
agreement is void as against public policy simply came too late.  See Alvarado,
892 S.W.2d at 855.  Therefore, the partial summary-judgment ruling was not
affected by the nonsuit, regardless of the fact that the summary-judgment
ruling was in El Naggar’s favor.  Consequently, rejecting El Naggar’s
contention that this appeal is moot based on its purported nonsuit, we proceed
with Gainsco’s issue.  

B.     Whether
the Buy-Back Agreement Violates Public Policy

In
a single issue, Gainsco argues that the trial court erred in granting El
Naggar’s motion for partial summary judgment and implicitly denying Gainsco’s
cross-motion on the ground that the buy-back agreement is void as against
public policy.  

Under
Texas Rule of Appellate Procedure 33.1(a)(2)(A), error may be preserved when
the trial court rules on a motion implicitly.  See Tex. R. App. P.
33.1(a)(2)(A).  When parties present cross-motions that are opposed and
mutually exclusive, an order that grants one motion may implicitly deny the
other.  See Walker v. Gutierrez, 111 S.W.3d 56, 60 n.1 (Tex. 2003)
(granting motion to dismiss implicitly denied motion seeking grace period); Salinas
v. Rafati, 948 S.W.2d 286, 288 (Tex. 1997) (granting motion to disregard
jury findings automatically denied motion for judgment on those findings). 
Gainsco included its cross-motion for partial summary judgment with its
response to El Naggar’s motion for partial summary judgment.  Gainsco contends
in both the cross-motion and the response that the buy-back agreement is not
void as against public policy.  Under these circumstances, we can infer that
the trial judge was actually aware of Gainsco’s cross-motion when it addressed
and decided El Naggar’s motion.  See Walker, 111 S.W.3d at 59 (response
included motion for grace period).  Therefore, this issue is preserved on
appeal.    

Declaratory
judgments rendered by summary judgment are reviewed under the same standards as
govern summary judgments generally.  Lidawi v. Progressive County Mut. Ins.
Co., 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.). 
We review the trial court’s grant of summary judgment de novo.  Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  In
a traditional motion for summary judgment, the movant carries the burden of
establishing that no material fact issue exists and that it is entitled to
judgment as a matter of law.  M.D. Anderson Hosp. & Tumor Inst. v.
Willrich, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).  Once the movant
produces sufficient evidence conclusively establishing its right to summary
judgment, the burden of proof shifts to the nonmovant to present evidence
sufficient to raise a fact issue.  Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex. 1995).  In reviewing a traditional summary judgment, we
examine “the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
motion.”  Yancy v. United Surgical Partners Int’l, Inc., 236 S.W.3d 778,
782 (Tex. 2007) (quoting City of Keller v. Wilson, 168 S.W.3d 802, 824
(Tex. 2005)).  

When,
as here, both parties move for summary judgment and the trial court grants one
motion and denies the other, we review the summary-judgment evidence, determine
all questions presented, and render such judgment as the trial court should
have rendered.  Comm’rs Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); see
Frank’s Int’l, Inc. v. Smith Int’l, Inc., 249 S.W.3d 557, 559 nn.2-3 (Tex.
App.—Houston [1st Dist.] 2008, no pet.) (applying standard of review applicable
to cross-motions when one motion granted and one motion implicitly denied on
existence of valid contract).  We may affirm the judgment, reverse and render a
judgment for the other side if appropriate, or reverse and remand if neither
party has met its summary-judgment burden.  Grynberg v. Grey Wolf Drilling
Co., L.P., 296 S.W.3d 132, 136 (Tex. App.—Houston [14th Dist.] 2009, no
pet.).  Each party bears the burden of establishing that it is entitled to
judgment as a matter of law; neither side can prevail based on the other’s
failure to discharge its burden.  Id.  

Whether
a contract is contrary to public policy is a question of law.  Hoover
Slovacek LLP v. Walton, 206 S.W.3d 557, 562 (Tex. 2006).  In general, Texas
law favors voluntary settlement of disputes and, thus, will give a properly
executed release legal force.  See Schlumberger Tech. Corp. v. Swanson,
959 S.W.2d 171, 178 (Tex. 1997); see also In re Prudential Ins. Co. of Am.,
148 S.W.3d 124, 129 & n.11 (Tex. 2004) (orig. proceeding) (“As a rule,
parties have the right to contract as they see fit as long as their agreement
does not violate the law or public policy.”).  A release, just as any other
contract, however, is subject to the public policy of the State.  Ranger
Ins. Co. v. Ward, 107 S.W.3d 820, 827 (Tex. App.—Texarkana 2003, pet.
denied).  The Legislature determines public policy through statutes.  Fairfield
Ins. Co. v. Stephens Martin Paving, LP, 246 S.W.3d 653, 665 (Tex. 2008). 
In addition, the Texas Supreme Court has determined that certain agreements
violate public policy.  Id.  “[T]o determine whether a contract violates
public policy, we consider the policies underlying any applicable statutes.”  Lawrence
v. CDB Servs., Inc., 44 S.W.3d 544, 555 (Tex. 2001) (superceded by statute
on other grounds).  In examining an agreement to determine if it is against
public policy, we look to see whether the agreement has a tendency to injure
the public good.  Sacks v. Dallas Gold & Silver Exch., Inc., 720
S.W.2d 177, 180 (Tex. App.—Dallas 1986, no writ). 

Gainsco
and Traxel entered into a buy-back agreement after the first trial between El
Naggar and Traxel ended in a mistrial.  Under the terms of the agreement,
Gainsco repurchased the CGL policy it had issued to Traxel for a sum of $50,000
in exchange for Traxel’s agreement to release Gainsco from any and all claims
arising out of the policy.  In its motion for summary judgment, El Naggar
contends that the buy-back agreement is contrary to public policy because
Gainsco and Traxel were aware of El Naggar’s claims when they entered into the
buy-back agreement, and the execution of the buy-back agreement leaves El
Naggar without a remedy.  El Naggar also argues that insurance was a
prerequisite to Traxel’s being awarded the construction contract, a fact the
parties dispute, and that the buy-back agreement circumvents that agreement. 

In
its motion for summary judgment, El Naggar relies heavily on the Texarkana case
Ranger Insurance Company v. Ward to establish that the buy-back
agreement between Gainsco and Traxel is void as against public policy.  The Ranger
case, however, is distinguishable.  In that case, Ranger issued an insurance
policy to Thompson Flying Services.  Ward, 107 S.W.3d at 823.  Thompson
applied a potent herbicide by aerial application to ranch property.   Id. 
After the herbicide drifted onto a neighboring property and destroyed a cotton
crop, the landowners sued Thompson Flying Services.  Id.  Ranger and
Thompson entered into a release, under which Ranger paid Thompson $100,000 in
exchange for his retroactively releasing Ranger from its obligations under the
policy as of the date of issuance.  Id.  The landowners obtained a
judgment against Thompson and then sued Ranger.  Id. at 824.  The
landowners sought a declaration that the release was void on two grounds, one
of which was that the release was void as against public policy.  Id. 
The trial court granted the landowners’ partial summary judgment on this and
another ground.  Id.    

The controlling factor in Ranger was that the
insurance policy was statutorily required.  Id. at 825 (“Section 76.111
of the Texas Agriculture Code required that a commercial aerial applicator of
pesticide maintain a policy of liability insurance in a minimum amount or
provide a surety bond in that same amount.”).  The court stated that central to
the interpretation and application of the compulsory insurance statute was its
expression of purpose, i.e. “protecting persons who may suffer damages as a
result of the operations of the applicant.”  Id. at 825, 829 (citing former
Tex. Agric. Code Ann. § 76.111(a)(2)).  The court held that Ranger’s attempt to
circumvent the statute and its purpose violated public policy.  Id. at
829-30.  

El
Naggar has not cited a statute requiring the CGL policy issued in this case.[9]  Therefore,
Ranger is distinguishable because it involved circumstances not present
here: “two parties, both aware of their likely liability for Landowners’ claims,
entering into a release in which the two parties attempt to contract away
liability and agree to leave the injured parties without the remedy intended
by the statute in question.”  Id. at 829 (emphasis added).  Nor
does El Naggar cite any binding authority, either statutory or common law,
stating that the buy-back agreement of a CGL policy under the circumstances
presented here is void as against public policy.[10]  Without
strong public-policy reasons against enforcement of the buy-back agreement, we
decline to declare the buy-back agreement in this case void as against public
policy.  See Lawrence, 44 S.W.3d at 553 (“Given the lack of any clear
legislative intent to prohibit [the agreements] . . . and absent any claim . .
. of fraud, duress, accident, mistake, or failure or inadequacy of
consideration, we decline to declare them void on public policy grounds.”). 
The trial court erred by granting El Naggar’s motion for partial summary
judgment and implicitly denying Gainsco’s cross-motion.  Accordingly, we
sustain Gainsco’s issue.  We reverse and render judgment declaring that the
buy-back agreement is not void as against public policy.  

Gainsco
also requests that we render judgment that the buy-back agreement between
Gainsco and Traxel is valid and enforceable; however, Gainsco did not plead a
declaratory-judgment counterclaim on the validity of the buy-back agreement and
does not contend that it did on appeal.  In its cross-motion for summary
judgment, Gainsco prays for a declaration that the buy-back agreement is not
void as against public policy.[11] 
Therefore, we decline Gainsco’s request to render judgment that the buy-back
agreement is valid and enforceable and only render a declaration that the
buy-back agreement is not void as against public policy.    

III.           
Conclusion

We
hold that the trial court erred by granting El Naggar’s motion for partial
summary judgment and implicitly denying Gainsco’s cross-motion on the ground
that the buy-back agreement between Gainsco and Traxel is void as against
public policy.  We reverse and render judgment declaring that the buy-back
agreement is not void as against public policy.








                                                                                                                                                                                                                                                

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Frost and Christopher.

 









[1]
The summary-judgment evidence includes two reservation-of-rights letters from
Gainsco to Traxel in relation to the suit.





[2]
The named parties to the buy-back agreement are Gainsco, Traxel, and Bell, with
Traxel and Bell collectively referred to as “Traxel.”





[3]
The final judgment in the underlying suit states that “[b]ased upon the joint
and several liability against Traxel Construction Inc., the Plaintiff abandons
all claims against Frederick Bell.”  It also states that all other defendants
had either settled their claims or had been nonsuited.  





[4]
In the live petition, El Naggar states that it is suing in its capacity
individually, as judgment creditor, and as assignee of claims possessed by
Traxel.





[5]
On February 6, 2009, the trial court ordered segregation of in-camera documents
that were sealed when filed.  The documents are (1) El Naggar’s reply to
Gainsco’s response to the motion for summary judgment/response to Gainsco’s
cross-motion, (2) El Naggar’s procedural and evidentiary objections and El
Naggar’s motion to strike Gainsco’s summary-judgment evidence, (3) Gainsco’s
reply to El Naggar’s response to Gainsco’s cross-motion and response to El
Naggar’s motion for leave to file deposition testimony, (4) Gainsco’s response
to El Naggar’s procedural and evidentiary objections and motion to strike, (5)
Gainsco’s motion for leave to file a reply to El Naggar’s response to Gainsco’s
cross-motion and response to El Naggar’s motion for leave to file deposition
testimony, and (6) Gainsco’s objections to El Naggar’s summary-judgment
evidence and motion for ruling on objections lodged at a deposition.  These
documents were filed in a supplemental clerk’s record and were not filed under
seal in this court.  





[6]
In the notice of appeal, Gainsco states that it submitted a corrected proposed
order of severance and abatement using “B,” but the trial court had not yet
signed the order at the time the notice of appeal was filed.





[7]
This order is not dated, but the file stamp indicates it was filed on July 23,
2008.





[8]
Both parties assume that the nonsuit is controlled by Texas Rule of Civil
Procedure 162.  At least one court has stated that a Rule 162 nonsuit applies
to a dismissal of the entire case and does not authorize a plaintiff to dismiss
some, but not all, claims against a defendant.  See C/S Solutions, Inc. v.
Energy Maint. Servs. Group LLC, 274 S.W.3d 299, 306 (Tex. App.—Houston [1st
Dist.] 2008, no pet.).  But see Cook v. Nacogdoches Anesthesia Group, L.L.P.,
167 S.W.3d 476, 482 (Tex. App.—Tyler 2005, no pet.) (citing Rule 162 for the
proposition that a party may choose to take a nonsuit as to some claims without
nonsuiting the rest of the pending claims).





[9]
In its reply to Gainsco’s response to the motion for summary judgment/response
to Gainsco’s cross-motion for summary judgment, El Naggar cites generally
article 21.21, section 4(10) of the Texas Insurance Code as the authority that
CGL insurance is for the public’s benefit.  See Act of May 10, 2001,
77th Leg., R.S., ch. 290 § 1, 2001 Tex. Gen. Laws 548, 550-51, repealed and
recodified by Act of May 22, 2003, 78th Leg., R.S., ch. 1274 §§ 2, 26(a)(1), 2003
Tex. Gen. Laws 3611, 3662, 4138 (current version at Tex. Ins. Code Ann. §
541.060 (West 2009)).  First, it is unclear from the record whether the trial
court considered the reply/response.  The trial court’s order states that it
considered El Naggar’s motion, the response to the motion, and the arguments of
counsel.  We do not have a record of the summary-judgment hearing.  Second,
neither article 21.21, section 4(10) of the Texas Insurance Code nor the
current version at Texas Insurance Code section 541.060 states that a CGL
policy like the one in this case is required for the public’s benefit.    





[10]
El Naggar states that the summary-judgment evidence establishes that El Naggar
relied on the fact that Traxel had insurance and that this reliance makes the
buy-back agreement between Gainsco and Traxel void as against public policy. 
First, assuming that El Naggar is referring to the deposition testimony of
Ahmed El Naggar to support this reliance argument, the record indicates that El
Naggar requested leave to include the deposition as part of its
summary-judgment evidence, but the record does not include a ruling by the
trial court on this request.  Second, El Naggar cites no authority for the
proposition that third-party reliance makes the buy-back agreement void as
against public policy.  In addition, in its reply/response in the trial court,
El Naggar makes a general allegation that the buy-back agreement was not the result
of an arm’s length transaction.  El Naggar does not cite evidence or authority
to support its allegation that lack of an arm’s length transaction renders the
buy-back agreement void as against public policy.   





[11]
Any failure by Gainsco to seek this relief in its pleadings does not present a
problem because the issue was tried by consent. See Marzo Club, LLC v.
Columbia Lakes Homeowners Ass’n, 325 S.W.3d 791,798 n.3 (Tex. App.—Houston
[14th Dist.] 2010, no pet.).